## L. M. STARR, RESPONDENT, *v.* BENJAMIN STARK, APPELLANT.

EQUITY—MONEY PAID UPON A JUDGMENT, WHEN MAY BE RECOVERED BACK.—
Where one recovers in an action of ejectment the possession of real property, and in the same action recovers a judgment for mesne profits for the withholding of the land, and afterwards the defendant in the action of ejectment brings a suit in equity against the plaintiff, in which it is determined and decreed that such defendant was the owner in equity of the land at and before the commencement of the action of ejectment, and that the plaintiff in such action was holding the legal title as the trustee of such defendant, such defendant may recover of such plaintiff the amount of the judgment for mesne profits, and the costs and disbursements recovered of him on said judgment.

IDEM—DECREE IN EQUITY, EFFECT OF, AS TO A JUDGMENT AT LAW CONCERNING SAME PROPERTY.—A decree in equity affecting property recovered at law does not operate on the judgment at law but on the party to the judgment, and such party may be enjoined from pursuing or enforcing such judgment. If such judgment has been executed a court of equity will treat the party having the proceeds thereof as a trustee in cases where the defendant in the judgment had equitable rights at the time of its rendition over which the court at law had not jurisdiction, and which in a court of equity would have prevented such an adjudication as was made in the court of law.

APPEAL from Multnomah County.

This is a suit in equity brought by the respondent, Starr, against the appellant, Stark, for an accounting for rents and profits received by Stark from certain property in Portland, of which Stark is alleged to have held the legal title as trustee of Starr; and for an accounting for certain moneys alleged to have been recovered from Starr by Stark by means of such legal title, and in violation of his trust for the detention of such real property by Starr.

In 1868 and 1870 Stark, the appellant, brought two actions of ejectment against Starr in the United States circuit court for this district to recover possession of certain separate parcels of real property in the city of Portland.

Such proceedings were had upon these actions that Stark recovered judgment of possession and for his costs, disbursements and damages for the detention by Starr. These judgments were affirmed in the supreme court of the United States. About the time these judgments were rendered in

the United States circuit court, or shortly prior thereto, Starr, the defendant in the actions of ejectment, brought suits in the same court to establish his title as the equitable owner of the premises in question, and to have Stark declared the trustee of the legal estate for the use of Starr. In each case an injunction was prayed for to restrain the enforcement of the judgments at law. The precise dates of these proceedings and judgments are stated in appellant's brief. The injunctions were denied.

Upon the hearing, the circuit court decreed that the plaintiff, Starr, defendant in the actions of ejectment and the respondent here, was, and had been, in the one case for more than six years prior to September, 1870, and in the other, for more than six years prior to December, 1868, the owner in fee-simple in equity of the premises in question; that Stark had the legal title as trustee of Starr, and that he convey to Starr such title. These decrees were affirmed in the supreme court of the United States.

Stark, having taken possession under the judgments in the ejectment proceedings, surrendered to Starr upon the final determination by the supreme court in the equity suits.

Starr brings suit for rents and profits accruing from the date of the surrender to Stark to that of the surrender by him, amounting to nine thousand three hundred and fifty-nine dollars and thirty-seven cents, and to recover the amount paid by him upon the judgment in the actions of ejectment, amounting, with interest, to five thousand four hundred and thirty-two dollars and thirty-nine cents. The judgments recovered by Stark and paid by Starr in the ejectment proceedings, were for costs and damages for the alleged wrongful withholding by the latter.

The court below found for the respondent, Starr, in the sums and upon the accounts above stated, and the respondent had a decree accordingly. This appeal is taken from so much of this decree as allows Starr five thousand four hundred and thirty-two dollars and thirty-nine cents on account of the judgment in the ejectment proceedings paid by him. The remainder of the decree is not appealed from.

Portions of the answer, which alleged that Stark acted in

good faith and upon an honest belief that he was the owner of the premises in question, were struck out by the court below.

*Northup & Gilbert,* for appellant:

The portions of the answer which were struck out by the court were a proper defense to this suit, and should have been allowed to remain. They showed that in bringing the actions of ejectment, Benjamin Stark acted in good faith in the honest belief that he owned the land he sued for and was entitled to the possession and occupation thereof. If this court should decide, as did the court below, that those judgments were obtained in trust, then the portions of the answer so struck out become pertinent matter of defense to the claim of plaintiff to recover the costs of those actions, amounting to some eight hundred and sixty-three dollars and thirty-nine cents in all.

A trustee is not chargeable with more than he has received, unless in a case of gross negligence amounting to willful default. (*Hamburg Co.* v. *Edsall,* 1 Beas. (N. J.) 392.)

The defendant Stark then, having acted in good faith in bringing these actions of ejectment and recovering mesne profits thereon, it follows that whether he was a trustee of the legal title for Starr or not, he can not be held to be trustee of the costs paid in those judgments, he never having received the same nor any benefit therefrom. He can not be held to account on an implied trust for that which he never received.

The defendant can not in this suit be required to repay to plaintiff the money which he recovered in those judgments for mesne profits. The money was paid upon judgments at law which have not been reversed, and there is no principle of law or equity which requires the defendant Stark to pay it back.

It has long been settled by a series of adjudications, beginning with the common law and extending through the decisions in the United States, that no action or suit lies to recover money paid upon a judgment which remains unre-

versed, and this is true whether the money was paid voluntarily or upon execution. (Chitty on Contracts, 709, 10 Am. Ed.; *Walker* v. *Ames*, 2 Cowen, 429; *Leonard* v. *Wilkins*, 9 Johns. 232; *Trustees* v. *Keller*, 1 Ala. 408; *Fuller* v. *Shattuck*, 13 Gray, 72; *Carter* v. *Canterbury*, 3 Conn. 456; 1 Perry on Trusts, p. 191, sec. 168.)

But the plaintiffs seek to base their right to recover upon the ground that since defendant Stark has been adjudged to hold the title to the land in controversy as trustee for the plaintiff, it follows that he received the money on these judgments as trustee also, and should now be held to account for them. To this we answer:

1. The defendant Stark was in no way the trustee of the plaintiff, except that he was trustee by operation of law of the legal title to the land sued for in those actions of ejectment. The trust was a fiction of the law created *in invitum* to prevent an inequitable use of the legal title against the owner of the equitable title. As a matter of fact there was no fiduciary relation or trusteeship between the parties, other than exists in every case where one person holds the equitable title and another holds the legal title, and, in ignorance of their rights, they resort to litigation to determine which of them owns the land.

2. Although it has been decided by the supreme court of the United States that Stark held the legal title, which he obtained by patent to the land in trust for Starr, it has not been decided or adjudicated by any court or in any proceeding that Stark recovered possession of this land by those actions of ejectment as trustee of the plaintiff, nor that the judgments for mesne profits were recovered in trust, nor does such a conclusion follow from what has been decided.

In order, then, for the plaintiff to recover on that ground, it must be decided by this court that Stark acted as trustee of Starr in bringing those actions of ejectment, and that all the judgments he recovered were recovered in trust, and that all the money paid him thereon was paid in trust. In short, it becomes necessary to try anew the rights of those actions at law, and to decide now that the judgments then

rendered were wrong, and that the money which those judgments gave to Stark absolutely as his own, was not his money, but belongs to the man from whom the judgments allowed him to take it. It is true that the judgments in ejectment were not conclusive of the title, but the judgments for mesne profits were money judgments, and stand as any other judgments for money, final and conclusive between the parties.

A judgment for money is an adjudication that the defendant is indebted to the plaintiff in a certain sum, the payment of which the plaintiff may enforce by execution. To say that the plaintiff, in the same judgment, owes to the defendant in trust, or otherwise, the very money so collected, is to make the judgment a nullity. It is to attack and set aside a judgment in a collateral proceeding.

The merits of a judgment can never be impeached or questioned in a counter-action by the judgment-debtor, either directly or collaterally. (*Pease* v. *Whitten*, 31 Me. 117; *White* v. *Merritt*, 7 N. Y. 355; *Greene* v. *Greene*, 2 Gray, 361; *Field* v. *Sanderson*, 34 Mo. 542; *Mosely* v. *Mosely*, 15 N. Y. 334.)

These decisions are based on the ground that there must be an end of litigation. Said Lord Kenyon, in *Marriott* v. *Hampton:* " If this action could be maintained, I know not what cause of action could ever be at rest; after a recovery by process of law, there must be an end of litigation."

If the plaintiff is allowed to recover the money in the present suit, there is nothing to prevent a future suit by Stark upon some new state of facts to put in issue and try over again the merits of this suit, and so on *ad infinitum.*

2. A judgment-creditor can not be trustee to the judgment-debtor. It has never been so held. He can not occupy that double and contradictory relation.

Said Lord Chief Justice Eyre: " Shall the same judgment create a duty for the recoverer upon which he may have debt and a duty against him upon which an action for money had and received will lie? This goes beyond my comprehension." (*Phillips* v. *Hunter*, 2 H. Black. 16.)

But whether the defendant Stark was trustee or not of

the plaintiff, the decisions we have cited seem to us conclusive that the plaintiff is not entitled to recover this money. Those decisions establish the broad and general doctrine that no action or suit lies to recover money paid on a judgment which remains unreversed. Counsel for respondent admit the correctness of those decisions, but claim that they apply to actions at law and not to suits in equity. Let us see whether this argument is correct: In the first place it is well established by the decisions that the action for money had and received is in its nature an equitable action. (*Irvine* v. *Hamlon,* 10 Serg. & R. 219; 2 Smith's Leading Cases, 402; *Buel* v. *Boughton,* 2 Denio, 91.)

Said Lord Mansfield: " This kind of equitable action lies to recover money which ought not in justice to be kept. It lies only for money which *ex æquo et bono* the defendant ought to refund. It lies for money paid by mistake, or for money got through imposition or extortion or oppression or an undue advantage taken of the party's situation." (*Moses* v. *Macfarlane,* 2 Burr. 1009.)

It is a proper form of action for a *cestui que trust* to recover money from his trustee. (*Merritt* v. *Millard,* 3 Abb. App. Doc. 291.) " There need be no privity of contract between the parties except that which results from one man's having another's money." (*Maison* v. *Waite,* 17 Mass. 563.)

Having shown, then, that the recovery of money paid on a judgment has been universally denied in equitable actions brought for that purpose, we apply the doctrine to the case before the court, and claim that in the absence of any precedent to the contrary, the defendant who has paid and satisfied a valid judgment, can not in any case at equity or in law, through the doctrine of a trust, or otherwise, recover the money so paid.

But plaintiff says it is inequitable for the defendant to retain this money, as it was recovered in breach of trust; but even if this were so, "it is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere." (*Homer* v. *Fisk et al.,* 1 Pick. 439.)   " Where one wrongfully

obtains the money of another he can not be disturbed in its enjoyment." (*Woodward* v. *Hill*, 6 Wis. 148.)

It is true that equity sometimes relieves against a judgment at law, but never after the judgment has been paid. It relieves only by injunction. (2 Story's Eq., sec. 1571; Adam's Eq., 196, 197.)

The cases in which such relief has been granted are, without exception, cases where the interposition of a court of equity has been sought before the judgment was paid.

" But no case has gone the length of deciding that after the proceeding has advanced to the maturity of a judgment, and the judgment collected by execution, it may be recovered back." (*White* v. *Merritt*, 7 N. Y. 355.)

In any view of this case, it will appear that the plaintiff has been guilty of laches that will prevent his recovery of this money. He might have prevented the collection of the money by an injunction. (High on Injunc., sec. 62; *Failing* v. *Stark*, 2 Saw. 642.)

Instead of his relying on his equitable defense and obtaining an injunction of the action of ejectment, he took issue with the plaintiff therein and stood upon his legal title—he denied the title of Stark, and, in short, denied *in toto* the existence of the very trust he is now seeking to establish.

He made no application for an injunction until by delay he lost his right thereto.

The action of ejectment for lot 3 was begun by Stark September 17, 1870, and judgment was rendered January 16, 1871. Plaintiff's bill in equity was not filed until January 16, 1871. The action to recover lots 1, 2, and N. $\frac{1}{2}$ of 4, was begun December 21, 1868; the case was tried and submitted August 4, 1869. Judgment was rendered February 15, 1870. The bill in equity was filed August 2, 1870, and it does not appear when motion was made for injunction, but the complaint shows that no injunction was sought in either of these cases until after the judgment had been rendered. The injunctions were properly denied. (*Kamm* v. *Stark*, 1 Saw. 547.)

The plaintiff, then, having stood by and suffered the de-

fendant Stark to proceed to judgment in those actions and to collect the money thereon, stands in the position of one who has made a voluntary payment of money. A voluntary payment can not be recovered back even though it could not have been enforced at law. (*Corkle* v. *Maxwell*, 3 Blatchf. 314; *Clarke* v. *Dutcher*, 9 Cow. 674; *Wyman* v. *Farnsworth*, 3 Barb. 370; *Benson* v. *Monroe*, 7 Cush. 125.)

The plaintiff, then, is not entitled to recover the money he paid as costs in those actions at law, because, in the first place, he occasioned all or nearly all of those costs by his own conduct in taking issue with Stark in a useless struggle, and in appealing to the supreme court from a judgment he knew he could not reverse; and, secondly, because those costs were not paid to Stark and were never received by him.

*Dolph, Bronaugh, Dolph & Simon,* for respondents:

If we correctly apprehend the position of counsel for the appellant, Stark, it is that this money having been collected upon legal process, can not be recovered from Stark, at law or in equity, and they cited authorities in the court below to show that where money has been recovered upon a judgment in an action at law, an action does not lie to recover it back. All these authorities are based upon the leading case of *Marriott* v. *Hampton*, 7 Durn. and East, 265. In that case H., the defendant, had formerly sued M., the plaintiff, for goods sold and delivered, for which M. had before paid H. and obtained his receipt, not being able however, to find the receipt, at the time, and having no further proof of the payment he was obliged to pay the money again, and gave a *cognovit* for the costs; afterwards he found a receipt and prosecuted to recover back the sum so wrongfully enforced in payment and it was held upon motion for a new action, that the action could not be sustained. We do not deem it necessary in this case to question the law as stated in *Mariott* v. *Hampton*. The rule is stated by the latest and best considered cases to be, that "Equity will relieve a party against a judgment at law when its justice can be impeached by facts, or on grounds of which the party seeking its aid, could not have availed himself at law." (*Cairo*

*R. R. Co.* v. *Titus*, 27 N. J. Eq. 102; *N. Y. and Harlem R. R. Co.* v. *Hawes et al.*, 56 N. Y. 178.)

The plaintiff is not seeking to recover back in equity money collected from him in the actions at law in the sense in which counsel for defendants contend he is. The law determined that as Stark held the legal title, he was entitled to the possession and damages for withholding the premises. Equity determined that Stark held the title in trust for Starr, and compelled him to convey the legal title to him, and surrender the possession to him, and did not thereby disturb the judgment at law or call it in question, nor will it by decreeing restitution to Starr of the moneys inequitably but legally collected from him by Stark.

Our position is that these judgments were recovered by Stark and the money received by him as trustee of Starr, and that having so received it equity will require him to account for the same to his *cestui que*. To use the language of Mr. Justice Sawyer, in overruling the demurrer in the case of *Kamm* v. *Stark*, in the United States circuit court, a case precisely similar to this: "It as much follows after a decree that Stark held the legal title of the property in trust for Starr at the time he recovered his judgment at law for the possession and damages that equity will compel him to account for the moneys received on the judgment, as to surrender the possession obtained by means of the judgment."

A trustee is a person in whom some estate affecting property is vested for the benefit of another. (Hill on Trustees, 1.) A contract to convey lands creates a trust. (1 Hilliard on R. P. 429; Hill on Trustees, 69, 81, 82.) Equity has jurisdiction in all cases against trustees. (5 Pet. 495; Adams' Eq. 220, 221; *Flint* v. *Lewis*, 61 Ill. 305; *Norton et al.* v. *Hixon*, 25 Id. 439, 456; Story's Eq. Jur., secs. 460, 461; Hill on Trustees, 518.) A trustee must account for what he has, or ought to have received, with interest. (3 Wend. 503; 4 Johns. Ch. 297; Adams' Eq. 209; *Rogers* v. *Rogers*, 1 Paige, 188; Hilliard on R. P., vol. 1, 474, sec. 22.) Equity follows trust funds wherever it can find them.

(*Cook* v. *Tullis*, 18 Wall. 332; Hilliard on R. P. 463; 9 Cal. 643.)

A trustee will not be permitted to take advantage of his situation to obtain any personal benefit to himself at the expense of his *cestui que trust*. (*Sloo* v. *Law*, 3 Blatch. 459, 477; *Davis* v. *Wright*, 2 Hill. 560; *Arnold* v. *Brown*, 24 Pick. 89; *Green* v. *Winton*, 1 Johns. Ch. 20; *Oliver* v. *Pratt*, 3 How. 333; Hill on Trustees, 535; *Shelton* v. *Homer et al.*, 5 Met. 464; *Jamison* v. *Glascock*, 29 Mo. 191.)

A trustee of the legal title may maintain ejectments against his *cestui que trust*. (2 Wash. R. P. 489, sec. 18.)

It would seem to follow from these propositions that if a trustee of the legal title who in equity was bound to convey the same to his *cestui que trust* should bring an action for the possession of the trust property, and by means of his legal title turn his *cestui que trust* out of possession of the trust property, and recover damages for the detention thereof, equity would not permit him to profit by his own wrong, by what the court below termed "an active breach of his trust," but would compel him to surrender the damages recovered by the breach of his trust, as well as the possession wrongfully obtained.

So his honor, Mr. Justice Sawyer, of the United States circuit court, held in the case referred to in overruling the demurrer of the defendant, Stark; so Judge Deady, United States district judge for the district of Oregon, held in rendering final decree in the same case; so the court below held in this case. A contrary doctrine would leave a great wrong to go unredressed for the want of a remedy, and be a reproach upon the administration of justice.

By the Court, BOISE, J.:

From the statement of the facts, it appears that Starr, being in possession of the lots which have been in controversy was dispossessed by Stark by action at law, maintained by him on his legal title which he held by a patent from the United States. In these actions of ejectment Stark recovered from Starr judgments for mesne profits and costs and interest on the same, in one case, seven hundred

and fifty-eight dollars and forty-five cents, and in the other two thousand three hundred and eighty dollars and seventy-seven cents. These sums with interest, at the date of the decree in the circuit court, amounted to the sum of five thousand four hundred and thirty-two dollars and thirty-nine cents, and it is from that portion of the decree that Stark appeals. The other portion, which is for rents and profits received by Stark since he obtained possession under said actions of ejectment, appellant has paid and does not contest the right of respondent to it.

As appears in the statement of the case; the United States supreme court, by a decree in equity, declared that Starr was the equitable owner of these lots at the time of the commencement of said actions and during all the time for which Stark recovered the rents and profits from Starr; and that during that time Starr was entitled to said rents and profits.

This decree has the effect to restrain the operation of these judgments in favor of or for the benefit of Stark by declaring that he still held the land for the use of Starr, and commanding him to execute the trust by conveying to Starr the legal title. The judgments of the court in the ejectment cases only established the legal title in Stark, and did not affect or determine the status of the equitable title at that time. (*Hill* v. *Cooper*, 6 Or. 181, and authorities there cited.)

A court of equity does not attempt to act upon a court at law itself, and does not claim any supervisory power over such court or its judgments. It acts solely on the party to such judgments, and will enjoin him in a proper case from pursuing any claim in a court at law over which the courts of equity have jurisdiction, either concurrent or exclusive. And where the party has equitable rights not cognizable in a court of law, which would in a court of equity have prevented such an adjudication as was made in the court of law, the judgment will interpose no obstacle to redress in equity since the court of law had no proper jurisdiction of the subject-matter forming the basis of redress in equity. (2 Story's Eq. Jur., secs. 1570, 1571, 1573.)

In this case it is conceded that the decree of the supreme court of the United States, declaring the respondent to have been the owner in equity at and before the rendition of the judgments in ejectments against him, renders those judgments inoperative so far as they affect the title to the land; for the equitable title of Starr, on which the decree is based, could not have availed Starr in defending against the legal title in a court of law. And these judgments against him are such adjudications as, Judge Story says, "will interpose no obstacle to redress in equity, since the court of law has no proper jurisdiction of the subject-matter forming the basis of redress in courts of equity."

But it is claimed by the appellant that the judgments for mesne profits, though recovered in the actions of ejectment, are not a part of the judgment for the possession of the land, but separate judgments for damages for withholding the land, which is authorized by statute for convenience and to save multiplicity of actions and costs.

It is true it is a recovery not necessary to a judgment for the possession of the land, yet the right of such recovery for damages which are simply rents and profits, must depend on the determination of the right to possession of the land.

If the right to recover possession fails to be established by the plaintiff in ejectment, then he can not recover the mesne profits. On the other hand, if the plaintiff established his right to possession and his judgment therefor, he has thereby established his right to the mesne profits, and the defendant in ejectment can not have any available defense thereto, unless it be that there are none, or that he has paid the same. It must follow as an inevitable conclusion that if Stark had no just right to the possession of these lots, he had none to the rents and profits which he recovered in these judgments. And that being at that time the trustee of Starr, whatever rents and profits he did receive were received for Starr, and should be accounted for.

As Starr had no power to interpose his equitable right to the rents and profits in his answer to the actions of ejectment, these judgments interpose no obstacle to his recover-

ing them from his trustee who wrongfully withholds them. When a trustee, by virtue of his holding the legal estate, takes the rents and profits, he must account to his *cestui que trust,* and it makes no difference whether he takes them from the *cestui que trust* or a stranger. The question is not how he became possessed of the rents and profits, but whether, when he received them, they belonged to the *cestui que trust,* and where this relation of trust is in controversy with reference to land, or the rents and profits thereof, it can only be settled in a court of equity, and when that relation is established in equity, and the court orders an account by the trustee, it can reach all the trust property and its issues, and interest on the same, which have come into the possession of the trustee.

It is claimed in this case that Stark is not a voluntary trustee, and has only been made so by a construction of law, and is not, therefore, liable in the same degree as one who has voluntarily assumed fiduciary relations to his *cestui que trust.* So far as good faith is concerned in Stark's proceedings, it could not affect the right of Starr to have an account for his property wrongfully withheld, and could only be important in considering whether or not Stark should be called on to pay a sum in addition to the real amount due, and interest, by way of damages for the wrongful withholding. Such damages are usually added by charging the trustee a higher rate of interest, and making rests in the nature of compound interest. Courts of equity exercise a larger discretion in adjusting the rights of the parties in such cases. (Hill on Trustees, 525.)

The amount of the judgments for mesne profits in the actions of ejectment are the amount of the rents and profits which had accrued to Starr before those actions were brought and wrongfully collected from him, and there can be no question now, since the decree giving the land to Starr, but that he should have the same returned to him, with interest.

It is claimed that whatever may be held, as to these mesne profits, that the costs in these actions were not recovered by

Stark to his use, and that the same were disbursements due or paid to officers and witnesses.

These costs and disbursements were such liabilities or actual expenses as Stark was liable for or had paid in conducting these actions and obtaining these judgments.

The decree establishes the fact that these lots were the property of Starr, and it follows that Stark violated his trust in bringing these actions, and he ought not in justice to compel Starr to pay for this wrong of his. "In equity, more strongly than at law, the maxim prevails that no man shall take advantage of his own wrong. Even at law, if a disseisor aliens the land and descent is lost, and afterwards the disseisor acquires the land by descent or purchase, the disseisee may enter."

"The object of equity is to compensate the *cestui que trust* and place him in the same situation as if the trustee had faithfully performed his own proper duty." (Story's Eq. Jur., secs. 1264, 1278.)

Stark, when acting in relation to this trust, wrongfully obtained this money from his *cestui que trust,* and if he is allowed to retain it he will be allowed to profit by his own wrong. It is claimed that the judgments in ejectment are not reversed, but we think, as before stated, that the decree which establishes the relations of the parties as trustee and *cestui que trust,* although it does not operate on or annul the judgments, operates on the parties, and thereby suspends the effect of the judgments against Starr, and only serves to show the extent and manner of the wrong of Stark in dealing with the trust property.

The decree of the court below does not award any damages against Stark; it simply restores to Starr what was wrongfully taken from him, with interest, and we think it should be affirmed, with costs and disbursements.