# State of Connecticut *v.* George H. Hooper

## Appellate Division of the Circuit Court

File No. CR 2-10503

Argued June 29, 1964—decided January 7, 1965

*Bernard Green,* of Bridgeport, for the appellant (defendant).

*Jack L. Grogins,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. The defendant, after a trial to the court, was found guilty of (1) propelling a power-boat while dredging for oysters or other shellfish upon a natural oyster bed, in violation of § 26-215 of the General Statutes, and (2) towing a dredge under water over a designated oyster bed without the permission of the owner or lessee, in violation of § 26-231. The pertinent sections of these statutes are quoted in the footnote.[1] The defendant has assigned a number of errors directed to the court's failure to correct the finding, to the admission of evidence, and to the ultimate conclusion that the defendant was guilty beyond a reasonable doubt. In view of the last assignment, we have examined all the evidence, as it is our duty to do, and we do not deem it necessary, for the protection of the defendant's rights, to review in detail the exceptions the defendant makes to the finding. We have given consideration to the

[1] "Sec. 26-215. POWER DREDGES. . . . The propeller or paddles of any boat so equipped that it may be propelled by any naphtha, vapor, steam or electric engine, or any other propelling device other than sails or by hand, shall not be used while such boat is engaged in dredging for oysters, clams, mussels or other shell-fish upon any natural oyster or clam bed. . . ."

"Sec. 26-231. TOWING DREDGE PROHIBITED. Any person who, without the written permission of the owner or lessee of any properly designated oyster ground, tows or assists in towing under water any dredge, trawl or contrivance for taking fish or shell-fish, in a manner to cause it to come into contact with any such ground or any shell-fish thereon, shall be [punished] . . . ."

finding, however, in order to determine the specific facts found by the court on conflicting evidence. *State* v. *Foord,* 142 Conn. 285, 286.

On May 1, 1963, The Northern Oyster Company, Inc., hereinafter referred to as Northern, was the owner of an exclusive franchise to plant, cultivate and harvest oysters on submerged lands in the part of the marginal waters of Long Island Sound known as "Lewis Gut," located in the towns of Bridgeport and Stratford. This designated oyster bed was staked off by saplings visible above the surface of the water and with flags attached to the stakes with certain markings thereon in accordance with statutory requirements. The only persons allowed to take oysters from such beds are those possessing the franchise thereto and their employees, contractors, licensees or permittees. Members of the general public are excluded from shellfishing on such grounds. Adjacent to this area and lying to the north and east thereof is a natural bed set aside by the proper authorities for the purpose of shellfishing by members of the general public. The designated area is an important part of the operation of Northern, as it is a natural oyster setting known for fast growth and protected from storms, drills and starfish. Large quantities of oysters were to be found in that area.

At about 4:30 p.m. on May 1, the defendant was operating a white rowboat about seventeen or eighteen feet long in the vicinity of Lewis Gut. An outboard motor was attached to the back of this boat and was in good working condition. The boat was not equipped with sails. For about fifteen minutes he was observed within the staked area and his boat was going in a circular fashion, dragging a dredge along the bottom of the designated oyster bed described above. The propelling power was supplied

by the outboard motor. During the time the defendant was under observation, he stopped his boat, pulled in the dredge and emptied the shellfish contents into the boat and then lowered the dredge into the water. This procedure was repeated about five times entirely within the designated bed owned by Northern. The defendant was not an employee of Northern on said date, nor was he given permission to dredge in the private oyster bed referred to. The defendant knew that the staked-out area constituted the designated private bed of Northern. After dredging in this area, the defendant proceeded to the natural oyster bed, traveling a distance of approximately fifty feet. He then stopped his boat, having moved that distance under the power of the outboard motor. After stopping, he pulled in the dredge, emptying the contents into his boat, throwing some overboard and retaining some for himself. Upon coming to shore, he was arrested by two shellfish policemen, and oysters were taken from his boat.

To sustain its burden in the prosecution of either charge, it was incumbent on the state to prove beyond a reasonable doubt that the defendant was engaged in dredging on shellfish grounds, being either designated or natural beds. To prove violation of § 26-215, it was necessary for the state to prove further that during the dredging operation the defendant propelled his boat by power supplied by means other than sail or hand. To establish a violation of § 26-231, the prosecution was required to prove that the towing of the dredge on designated grounds was without permission of the owner or lessee.

The court has found upon credible testimony of three eyewitnesses, all of whom were familiar with the area where the defendant was present and were cognizant of the distinction between a designated

and a natural bed, and one of whom had the benefit of magnified ocular observation through the aid of binoculars, that the defendant had moved his boat by means of the outboard motor while he was dredging on the designated bed of Northern and on the adjacent natural bed. These are findings of fact which we cannot disturb. We cannot retry the case.

The defendant claims, however, that, as to the alleged violation of § 26-231, the evidence admitted to prove the location of the designated bed was incompetent and should have been excluded on the defendant's objection. It is asserted that the testimony of the state's witness, William Ciaurro, as to the location of the designated oyster bed in Lewis Gut was based on hearsay and did not satisfy the standards demanded by our rules in proving title to land. See, for example, *New Canaan Country School, Inc.* v. *Rayward,* 144 Conn. 637, 640. The state introduced, on trial, without objection, a copy of what purported to be a quitclaim deed, certified by the town clerk of Bridgeport, as being a true copy of an instrument recorded in the land records of that town. This was the document of title relied on by the state to prove shellfishing on a designated oyster bed. It showed on its face a conveyance to Northern by the Cedar Island Oyster Company of all its interest in a perpetual franchise for planting and cultivating shellfish on certain grounds described therein. The instrument was dated May 19, 1955. Ciaurro was an experienced oysterman and was supervisor for Northern in connection with its operations in the Lewis Gut area. In 1958, he assisted W. Flanders Smith, who at that time was engineer for the state shellfish commission, in surveying and staking out the designated bed referred to as parcel 2 in the deed. The state, over defendant's objection, had introduced a map, dated January, 1958, certified by W. Flanders Smith, as land surveyor, showing the

location of the grounds of Northern described in the deed. This map, containing in detail the result of Smith's survey, showed the boundaries of the designated area and indicated with precision the location of the stakes that had been jetted after the survey and still remained in place on May 1, 1963. The prosecution had also introduced, without objection, a map which on its face appears to be a copy of a map forming part of the records of the shellfish commission and showing the location of the natural and designated beds in the submerged area of Lewis Gut.

Taking up the defendant's first claim of error, that the evidence offered in proof of title was incompetent, it may be pointed out that neither the state nor the towns, as subdivisions of the state, acting under statutory powers in designating oyster beds for cultivation and exploitation by private persons, can confer a title in fee to lands lying under the waters of the marginal sea over which the state has dominion. The charter issued to the "Governour and Company of the English Collony of Connecticut" by Charles II in 1662 bounded the lands of the colony on the south by the sea. By later enactment of the legislatures of New York and Connecticut, a dividing line was established between the two states in Long Island Sound and Fisher's Island Sound and was approved by Congress. 21 Stat. 351; 8 Spec. Laws 377; 16 Spec. Laws 1107. In Connecticut, the title to the soil underneath the waters of the marginal sea, below high-water mark and to the dividing line between Connecticut and New York, is in the state as trustee for the public, subject only to navigation, except as the title may be affected by lawfully acquired privileges or franchises of littoral proprietors or others, such as shellfishermen, who by statute may acquire, by lease or perpetual franchise, the exclusive right to plant, cultivate and

harvest shellfish on designated grounds. *McGibney* v. *Waucoma Yacht Club, Inc.,* 149 Conn. 560, 563; *Shorehaven Golf Club, Inc.* v. *Water Resources Commission,* 146 Conn. 619, 624; *Rochester* v. *Barney,* 117 Conn. 462, 468; *Lovejoy* v. *Norwalk,* 112 Conn. 199, 205; *Keister's Appeal,* 86 Conn. 7, 11; *State* v. *Nash,* 62 Conn. 47, 50.

While the deed appears to be a quitclaim deed with a conveyance and a habendum in certain described premises, it could grant no greater title than could be conferred originally by the state or towns, acting under the provisions of chapters 491 and 492 of the General Statutes. No objection was raised as to the kind of instrument by which the right to the franchise was acquired by Northern, nor to the correct delineation of the grounds on the map of the shellfish commission. The force of the defendant's attack seems directed mainly against the admission of oral testimony and of the map relating to stakes marking the boundaries and location of the private oyster bed over which the defendant had been observed. To prove a violation of § 26-231, it was essential for the state to establish that the waters in which the defendant was operating covered private or designated oyster grounds. The oral testimony of Ciaurro, an employee of Northern, as to his knowledge of that fact, was, of course, incompetent for that purpose, and if this were the sole evidence, it would have been insufficient to establish the ownership by Northern of an exclusive interest in the shellfish grounds in question. Evidence of title, however, was supplied by the deed, which was introduced without objection, and also by the shellfish commission map, showing the location of natural and designated oyster beds in Lewis Gut.

The defendant contends, nevertheless, that neither the map nor the deed, by itself, could prove where

the designated oyster bed of Northern was located; that this could be established only through competent proof of the staked-out boundaries through testimony of the surveyor; and that the map certified by Smith, offered for that purpose without preliminary qualification, was erroneously admitted. The error claimed is that Smith, the engineer who made the survey and prepared the map, was not presented as a witness to qualify the map, and that the testimony of Ciaurro, who assisted in making the survey, was not competent to lay a foundation for the introduction of the map. The objection was well taken. The claim of the state that the map was an official document, having reference apparently to maps prepared by the surveyor of the shellfish commission under the provisions of §§ 26-190 and 26-192, is not tenable. The exhibit was not offered as a business entry of the commission, pursuant to § 52-180, or as a record of a public office under § 52-165; and the contention of the state that it was admissible because of a land surveyor's seal thereon is without merit. There is no statutory provision by which the seal of a land surveyor, the use of which is authorized under § 20-304, is sufficient by itself to qualify a document for its admission in evidence.

The error, however, was harmless. The map was admissible as a sketch to prove the relative position of the private and natural oyster beds relevant to the crimes charged and as reflecting the true situation respecting the staked area testified to by all the witnesses, including the defendant. See such cases as *Dawson* v. *Davis,* 125 Conn. 330, 332; *Hageman* v. *Freeburg,* 115 Conn. 469, 473. It may also be inferred from the legend appearing on the shellfish commission map and that on the map certified by Smith that both maps were prepared by Smith as engineer of the shellfish commission, acting for the commission under the provisions of § 26-190. It was

competent for Ciaurro to testify as to where the boundary lines were placed by the surveyor and where the stakes were jetted in order to show the location of the private bed. *Hamilton* v. *Smith,* 74 Conn. 374, 377-78. There was also other adequate evidence to prove the location of the designated oyster bed in relation to the natural grounds. The testimony of Julius Nelson, who was the president of Northern and a member of the state shellfish commission, as to Northern's exclusive interest in the private grounds and as to their location and boundaries and the location of the adjacent natural grounds, tended to describe and outline the areas in which the defendant's activities were seen. As an officer and agent of Northern, Nelson was qualified to testify regarding the location of the oyster bed of Northern and its staked boundaries. An owner is presumed to know the boundaries of his own land and is a competent witness to the location of its bounds and its occupancy when they are within his personal knowledge. His interest might affect the weight to be given his testimony, but not its admissibility. *Dawson* v. *Davis,* supra, 333. As a member of the shellfish commission, Nelson had a peculiar knowledge of the location of designated and natural oyster beds, for the commission was required to keep such maps and records for official use and public consultation. This evidence, together with the judicial admission of the defendant, in the course of his testimony, that he knew that certain numbered stakes marked the boundaries of the private grounds in question, though he denied that he was present within those boundaries, coupled with the eyewitness testimony as to what took place, was adequate to sustain the finding of the court that the defendant had violated § 26-231.

A claim of the defendant concerning the testimony of Ciaurro that the defendant had no permission

from Northern to operate over its grounds requires no discussion. Whatever technical objection there may have been to this testimony is of no significance, because the testimony of Nelson supplied any insufficiency in evidence as to lack of permission from the owner. Furthermore, the defendant testified in his own behalf and made no effort to deny the testimony. His defense was that he did not trespass for the purpose of dredging, not that he had permission to dredge.

The defendant cannot seriously assert that there was error in his conviction, in violation of § 26-215, of power dredging over a natural oyster bed. The location and description of a natural oyster bed, under exclusive jurisdiction of the state, is fixed by statute. General Statutes § 26-192; *State* v. *Nash,* 62 Conn. 47, 50. An exhibit, an official publication of the shellfish commission, contained a description of the natural bed in Lewis Gut. The two maps previously discussed showed in detail, by survey and by contiguity of the natural bed to private oyster beds, the precise location of both. Moreover, because the beds in question are both adjacent to each other, the defendant can hardly claim he was not moving in his boat in waters over one or the other. His testimony was that he was over a natural bed but was not power dredging. As to the latter fact, there was credible evidence that he was using his outboard motor while engaged in the admitted act of dredging. This evidence the court could accept, and it was enough to support a finding that the defendant was guilty of a violation of § 26-215.

There is no error.

In this opinion DEARINGTON and KINMONTH, Js., concurred.