Argued October 10, reversed and remanded November 8, 1968

BROWN, *Appellant, v.* DORFMAN, *Respondent.*

446 P. 2d 672

*Eugene E. Laird,* Salem, argued the cause and filed briefs for appellant.

*Gary D. Gortmaker,* District Attorney, Salem, argued the cause for respondent. With him on the brief was Don W. Schussler, Deputy District Attorney, Salem.

Before PERRY, Chief Justice, and GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

GOODWIN, J.

Plaintiff, who alleged that the defendant without authority constructed sewer works upon her land, appeals from a judgment on a directed verdict for the defendant.

■ The complaint attempts to allege a cause of action under ORS 105.005. Under that statute, one having the present right to possession of land may combine with a prayer for the possession of the land a prayer for damages for trespass. See *Trotter v. Town of Stayton,* 45 Or 301, 77 P 395 (1904); *Starr v. Stark,* 7 Or 500 (1879).

Since the defendant has not asserted that the construction of sewer lines upon the land of another is not an exercise of possession as well as a trespass, we will assume for the purposes of this appeal that either ejectment or trespass will lie. See, for a discussion of the quality of possession involved in ejectment actions, Note, 30 Or L. Rev 380 (1951).

Upon trial, the court excluded as irrelevant most of the plaintiff's evidence. When the evidence that had been received was tested by a motion for a directed verdict, the plaintiff's case was found wanting. The admissibility of evidence, accordingly, becomes the focus of inquiry on this appeal.

The evidence which the plaintiff offered was not all material, but much of it had some probative value, and that which had none was harmless surplusage. The defendant was so industrious in objecting, however, and so successful, that the plaintiff was effectively barred from proving any of the facts that were seriously disputed. We set out a selection from the transcript to illustrate the manner in which the case was tried. The plaintiff, whose right to possession of the land in question had been established, at least for the purposes of surviving a nonsuit, was on the stand.

"MR. LAIRD: Q Referring to Exhibit 9—can you explain the direction that that picture was taken, from Exhibit 8? Where was the person with the camera standing, and which direction were they facing?

"A The property runs east and west. This would be taken from the west section, going east, or from the driveway to the next property. In other words, it's undoubtedly taken from about this tree.

"Q From the driveway in Exhibit 1, so it would be facing east from the driveway?

"A East from the driveway, yes.

"Q I believe you mentioned earlier that there is someone standing in the picture?

"A Yes, that's the lower part of my son.

"Q Why was he standing at that particular location?

"A That is the property line between our house—

"MR. GORTMAKER: I will object to that, your Honor, and ask that it be stricken, as to the property line if there was no survey made.

"MR. LAIRD: Q Is the property line between your property and the property on the east well defined?

"A I would say, to the best of my knowledge, this is. There are gates up further and so forth, and this has always been considered the line between our property and my neighbor's property, yes.

"Q And is that the property line that was shown to you at the time you purchased?

"A Yes, it was. However, it was not shown to me by a surveyor.

"THE COURT: The objection should be sustained, and I will instruct the jury to disregard the statement of the witness about the property line."

■ We know of no rule that a landowner must be instructed by a registered surveyor before he can testify to the location of a boundary on his land. The defendant, if he was serious in questioning the witness's qualification to testify on the subject of her own boundaries, might have argued to the jury about the weight of her evidence, but the idea that the plaintiff's evidence was incompetent for the reasons stated in the objection appears to be a novel one. In the defendant's brief in support of the court's ruling, the only citation to authority is to "5 Wigmore on Evidence, p 425." Consulting this citation, one finds a discussion of the declarations of a deceased landowner concerning his boundaries.

■ The trial could have been greatly simplified by a jury view, and by direct proof that the defendant had constructed the works complained of. The plaintiff attempted, however, to prove by a vast amount of documentary, circumstantial, and third-party evidence that the defendant had been upon her land and that

afterward a manhole was found. This evidence may have been roundabout, but it was not irrelevant. A jury could have drawn all the necessary inferences from the offered evidence, and it should have been received.

██ The defendant was correct in one point. A landowner seeking damages for trespass is not ordinarily entitled to damages for mental suffering. *Douglas v. Humble Oil,* 251 Or 310, 445 P2d 590 (1968). There were no special circumstances in the case at bar that would warrant a finding that mental suffering was the direct and natural consequence of the trespass. A possessor of land is entitled, however, to prove whatever damages, if any, resulted from a trespass, ORS 105.005, and, in a proper case, may recover exemplary damages as well. See *McElwain v. Georgia-Pacific,* 245 Or 247, 421 P2d 957 (1966); *Williams v. Goose Lake Valley Irr. Co.,* 83 Or 302, 310, 163 P 81 (1917).

Upon another trial, counsel should narrow the issues to the essentials, and should find it possible to put before the jury simple and direct evidence that will prove whether or not the defendant did, without lawful right, go upon the land of the plaintiff and construct works. If such evidence is offered, the court should receive it.

Reversed and remanded.