517 P.2d 554

Jean W. HOOK, Plaintiff-Appellant,

v.

Stanley HORNER et al., Defendants-
Respondents.

No. 11012.

Supreme Court of Idaho.

Dec. 14, 1973.

Charles H. Kimball, Philip E. Dolan, Coeur d'Alene, for plaintiff-appellant.

Scott W. Reed, Coeur d'Alene, Cope R. Gale, Moscow, for defendants-respondents.

BAKES, Justice.

This appeal involves a boundary dispute between adjoining landowners over certain property located in Kootenai County, Idaho, on the shores of Pend Oreille Lake. Plaintiff-appellant Jean W. Hook brought this action for trespass, encroachment, fraud and quiet title against defendant-respondents Horner and Fountain, alleging that respondent Fountain wrongfully attempted to sell respondent Horner 46 feet of property belonging to appellant, and that respondent Horner was trespassing and encroaching upon 46 feet of appellant's property. Since the legal descriptions to the various properties do not overlap, the primary issue which was attempted to be litigated in the trial was the location on the ground of the line dividing the property of appellant from the land of respondents.

The following is a sketch of plaintiff's Exhibit 16, admitted into evidence, which illustrates the legal descriptions of the properties of the parties:

The legal descriptions of all the properties in question commence at the meander corner between Section 3, Township 53 North, Range 2 West, Boise Meridian, and Section 34, Township 54 North, Range 2 West, Boise Meridian, as set out in the original government survey. The descriptions then proceed in an easterly direction along the north line of Section 3. The Fountain and Horner properties lie east of a north-south line which is 1370 feet east of the meander corner between Section 3 and Section 34, and the Hook property lies west of the same north-south line. Respondent Fountain owned 200 feet immediately east of the 1370 foot north-south line, and he conveyed a portion of it immediately adjoining the plaintiff-appellant's property to respondent Horner. Appellant owned 170 feet lying immediately west of the north-south line. The problem in this case is compounded by the fact that the meander corner in question was inundated when the water level of Lake Pend Oreille was raised by the construction of the Albany Falls Dam in 1931.

Plaintiff alleged in her complaint, and attempted to prove, that respondent Fountain had staked out the lot which he sold to respondent Horner approximately 46 feet west of the north-south line, and thus had encroached 46 feet upon her lot. To establish that claim, appellant employed Milton Booth, a registered surveyor who had originally prepared the legal descriptions from which respondent Fountain prepared the deed to respondent Horner. Surveyor Booth was called by appellant as a witness, and he testified that the meander corner described in the chain of title to both properties was presently under the waters of Lake Pend Oreille and as a result could not be located. He also testified that he did not actually locate the original section corners or retrace the notes of the original government survey, but that he did locate what appeared to be a restored corner monument at the northwest corner of Section 3, and various permanent objects such as fences, and tied into an old Coeur d'Alene-Pend Oreille railroad grade. Appellant, in an effort to introduce as evidence the survey of Milton Booth (Plaintiff's Exhibit 2), offered into evidence a 1940 survey of the property in question prepared by William Ashley in his capacity as Kootenai County Surveyor (Plaintiff's Exhibit 1). Mr. Ashley was deceased at the time of

trial. For some reason, plaintiff's offer of Exhibit 1 was limited to "illustrative purposes" and was not offered to prove the location of the properties in question. The trial court refused to admit the Ashley survey, Exhibit 1, based upon the objection of respondents that the survey was hearsay and was not presented by the person who prepared it. The trial court then refused to admit into evidence plaintiff's Exhibit 2, which was the survey made by Milton Booth, appellant's surveyor, on the ground that Mr. Booth had failed to follow proper surveying practices for the relocation of lost or obliterated corners as set forth in the United States Manual of Instructions for the Surveying of Public Lands.

▇ Appellant assigns as her first assignment of error the trial court's rejection of plaintiff's Exhibit 1, a survey prepared in 1940 by William Ashley in his capacity as Kootenai County Surveyor. The record indicates that plaintiff's Exhibit 1 was offered for "illustrative purposes" only. Where a witness is unable, by means of words or gestures alone, to convey to a jury or court an accurate understanding of the physical facts with which his testimony is concerned, he may make a drawing or adopt a drawing of another, as a means of portraying to the court facts which are within his knowledge. McKee v. Chase, 73 Idaho 491, 253 P.2d 787 (1953). However, in the instant case, there is no intimation in either the record or the briefs that plaintiff's Exhibit 1 was introduced to help the witness, Milton Booth, relate his testimony to the court. It was apparently offered for no other purpose than to establish various measurements from the meander corner which is presently under the waters of Lake Pend Oreille, and as a verification of the location of the northwest corner of Section 3. Thus, since plaintiff's Exhibit 1 was offered for illustrative purposes but was not utilized to portray to the court facts within the knowledge of surveyor

Booth, it was correctly rejected by the trial court.

▇ Even if plaintiff's Exhibit 1 was offered as substantive evidence and not for illustrative purposes only, as appellant apparently contends in her brief, appellant's contention that it was admissible as an ancient document must also fail. The general rule pertaining to ancient surveys is that an ancient survey made by competent authority, recorded or accepted as a public document, and produced from proper custody, will be admissible in evidence, particularly in connection with determining the location of boundary lines. 29 Am.Jur.2d, ¶ 909, p. 1017 (1967). There are no Idaho cases on the subject of ancient surveys; however, Idaho has enacted a statute governing the admissibility of surveys in general. I.C. § 31–2709 reads:

"No survey or resurveys hereafter made shall be considered legal evidence in any court within the state, except such surveys as are made in accordance with the United States manual of surveying instructions, the circular on restoration of lost or obliterated corners and subdivisions of sections, issued by the general land office, or by the authority of the United States, the state of Idaho, or by mutual consent of the parties."

At the time William Ashley prepared his survey, Exhibit 1, in 1940, that same section was I.C.A. § 30–2209, which read as follows:

"No survey or resurveys hereafter made *by the county surveyor* or other surveyor, shall be considered legal evidence in any court within the state, except such surveys as are made in accordance with the United States manual of surveying instructions, the circular on restoration of lost or obliterated corners and subdivisions of sections, issued by the general land office, or by the authority of the United States, the State of Idaho, or by mutual consent of the parties." (Emphasis added).[1]

---

1. The emphasized language was removed in 1963 when the office of County Surveyor was abolished.

In a case similar to the instant case, County of Bonner v. Dyer, 92 Idaho 699, 448 P.2d 986 (1968), this Court held that a county surveyor's map was admissible based upon I.C. § 9–408(2). The Court stated at page 703, 448 P.2d at page 990:

"Plaintiff's exhibit 2 would have been admissible if limited to illustrative purposes. See McKee v. Chase, 73 Idaho 491, 253 P.2d 787 (1953). However, the court admitted the exhibit to prove two facts set forth therein. Since the map was an out-of-court statement of a person not under oath and not subject to cross-examination, it constituted inadmissible hearsay, except that it appears from the record that it comes within an exception to the hearsay rule. I.C. § 9–408 in part provides:

" 'The entries and other writings of a decedent, made at or near the time of the transaction, and in a position to know the facts stated therein, may be read as prima facie evidence of the facts stated therein, in the following cases:

" '1. * * *

" '2. When it was made in the professional capacity, and in the ordinary course of professional conduct.

" '3. * * *'

"Exhibit 2 was admissible under the statute." 92 Idaho at 703.

An analysis of the opinion and the briefs submitted by the attorneys in the *Dyer* case indicates that the parties neither cited nor argued to the court the applicability of I.C. § 31–2709, and thus it must be assumed that the survey in that case was conducted according to the Manual of Surveying Instructions as required by I.C. § 31–2709. In the instant case, the trial court's action in refusing to admit plaintiff's Exhibit 1 because it was hearsay was incorrect in view of the ruling of this Court in County of Bonner v. Dyer, *supra*.

However, even though the Ashley survey falls within a statutorily created exception to the hearsay rule, we agree with respondents' contention that without the field notes of the Ashley survey, or other evidence indicating that the survey was conducted in accordance with the United States Manual of Surveying Instructions, as required by I.C. § 31–2709, it cannot be admitted as substantive evidence. I.C. § 31–2709 is a specific statute governing the admissibility of surveys. I.C. § 9–408 is a general statute creating an exception to the hearsay rule for certain writings of a decedent. To the extent that there is a conflict, I.C. § 31–2709, being a specific statute, prevails over I.C. § 9–408, a general statute. State v. Jones, 34 Idaho 83, 199 P. 645 (1921). Thus, before a survey made by a decedent can be admitted into evidence as an exception to the hearsay rule based upon I.C. § 9–408, it must be shown that the survey was conducted in accordance with the Manual of Surveying Instructions as required by I.C. § 31–2709. There is no evidence in the instant case that Ashley complied with the requirements of I.C. § 31–2709. Similarly, the rule pertaining to ancient surveys relied upon by appellant will not preclude the application of I.C. § 31–2709 upon the Ashley survey. Rules of common law are in effect in Idaho only to the extent that they are not repugnant or inconsistent with legislative enactment. Doggett v. Boiler Engineering, 93 Idaho 888, 477 P.2d 511 (1970). Accordingly, plaintiff's Exhibit 1 was inadmissible.

Appellant's second assignment of error relates to the trial court's rejection of the survey map prepared by Milton Booth, a registered land surveyor. The trial court rejected the Booth survey based upon the fact that it failed to conform to the United States Manual of Surveying Instructions as required by I.C. § 31–2709. Mr. Booth testified that he did not find any of the original section corners, nor did he find the meander corner which was under water. He merely attempted to verify his survey by referring to prior surveys, one of which was the Ashley survey discussed earlier. Even if the Ashley survey had been admitted for illustrative purposes, it would not have provided a legal basis upon which Booth could base his survey, since

it would not have been substantive evidence, but merely illustrative of Booth's testimony. We find no error in the trial court's finding that the Booth survey did not comply with I.C. § 31–2709 in that it was not made in accordance with the United States Manuel of Surveying Instructions. Nutterville v. McLam, 84 Idaho 36, 367 P.2d 576 (1961).

■ At the end of plaintiff-appellant's case in chief, the trial court granted respondent's motion for involuntary dismissal under Rule 41(b) of the Idaho Rules of Civil Procedure, based upon the fact that appellant had failed to show any right to relief because the surveyor called by appellant failed to properly follow recognized surveying practices in surveying the property in question. The trial court entered findings of fact and conclusions of law, and plaintiff-appellant assigns as error finding of fact V and VI, which are as follows:

V. "Since the description of the properties of the plaintiff and of the defendants did not in the evidence presented by plaintiff commence at the located original meander corner or properly restored meander corner, the descriptions do not establish the boundaries of any property."

VI. "The evidence as presented by plaintiff does not prove any fence lines or monuments of title or particular use or occupation of the property between the ownership asserted by plaintiff and the ownership of defendants. The evidence indicates that the land area in dispute was mostly vacant or unused land at least until the defendants Horner commenced construction of a house in 1965."

After a careful study of the transcript, we find that those findings are not supported by the record. While admittedly plaintiff-appellant Hook was not certain of the location of her east boundary which adjoined the respondents, as the dissenting opinion of Justice Shepard accurately points out,

nevertheless plaintiff-appellant did introduce into evidence copies of the deeds whereby both she and defendants-respondents acquired title to their respective properties. These deeds showed that she owned 170 feet lying immediately west of the north-south line which is 1370 feet east of the meander corner, and that respondent Fountain owned 200 feet east of the same north-south line, the southwest portion of which he had sold to respondent Horner who built his house on it. Further, appellant Hook testified that the western boundary of her lot was marked by a rock retaining wall. While the survey prepared by Milton Booth was properly refused, he nevertheless testified at some length regarding the physical measurements on the ground, including measurements from the rock retaining wall which marked the western boundary of appellant Hook's property, to a point which was 170 feet east of the rock wall, which would have located the north-south line 1370 feet east of the meander corner. He further measured an additional 200 feet east, which is the east-west width of respondent Fountain's property as called for in his deed, and testified that he located certain natural monuments there which to him reflected the east boundary line of the respondents' property. The testimony of plaintiff-appellant Hook, together with the monuments and measurements testified to by the surveyor Milton Booth, were competent evidence to establish that the 1370 foot line which divides the property of plaintiff-appellant Hook and the property of respondents was substantially east of the house built by respondent Horner, supporting the allegations in plaintiff's complaint.

■ While admittedly the foundation testimony for the survey, plaintiff's Exhibit #2, was confused, an accurate survey is not the only evidence which is admissible to prove a property boundary. As stated by the Supreme Court of Oregon in Brown v. Dorfman, 251 Or. 522, 446 P.2d 672 (1968):

"We know of no rule that a landowner must be instructed by a registered surveyor before he can testify to the loca-

tion of a boundary on his land." 446 P.2d at 674.

In Port of Newport v. Haydon, 4 Or.App. 237, 478 P.2d 445 (1971), the Oregon Supreme Court again stated:

"Property boundaries and dimensions may be proved by every type of evidence generally admissible to establish any fact. (Cases cited). In Brown v. Dorfman, 251 Or. 522, 446 P.2d 672 (1968), the Supreme Court specifically acknowledged that a landowner may testify to the location of her boundaries without the aid of a survey. The court further stated that any challenge to such testimony should be directed to the weight to be given it, not to its competence." 478 P.2d at 448.

A landowner is a competent witness to the location of the boundaries of his own land if they are within his personal knowledge, and may testify to the same. His interest in the outcome of the litigation would affect the weight to be given to his testimony, but not its admissiblity. State v. Hooper, 3 Conn.Cir. 143, 209 A.2d 539 (1965); Nabours v. Whiteley, 466 S.W.2d 62 (Tex.Civ.App.1971); O'Hara v. Brace, 258 Or. 416, 482 P.2d 726 (1971). The plaintiff in the instant case established her west boundary as the rock retaining wall, and the combined testimony of the plaintiff and the surveyor Milton Booth indicated that the 170 foot wide lot called for in appellant's deed would include the land upon which respondent Horner built his house. In ruling upon motions made under Rule 41(b) of the Idaho Rules of Civil Procedure, the trial court may weigh the evidence, Nelson v. Marshall, 94 Idaho 726, 497 P.2d 47 (1972); however, it may not disregard testimony which was neither contradicted, impeached nor inherently improbable. Olsen v. Hawkins, 90 Idaho 28, 408 P.2d 462 (1965). In this case there is no conflict over the fact that plaintiff's deed calls for 170 feet of property immediately west of the 1370 foot north-south line. The evidence further shows that the west property line of appellant Hook is a rock retaining and that respondent Horner's house is built within 170 feet of that rock wall. That much of plaintiff's evidence was neither contradicted nor inherently improbable. Thus, appellant Hook carried the burden of proof required to support her complaint as against a motion for involuntary dismissal under Rule 41(b). The involuntary dismissal granted by the trial court, by the express provisions of Rule 41(b), operates as an adjudication upon the merits, and as a result plaintiff is precluded from ever again filing suit to resolve this boundary line dispute. On the other hand, respondents filed no counterclaim to plaintiff's complaint asking that the title to the property in question be quieted in them, or establishing the location of the boundary line between the parties, and since such claims would appear to be compulsory counterclaims on their part as defined in Rule 13(a) of the Idaho Rules of Civil Procedure, respondents are also precluded from ever filing suit to have this issue determined. 3 Moore's Federal Practice, § 13.12 [1] (1972). The action of the trial court, in dismissing the plaintiff's action, did not resolve the boundary line dispute between the parties nor quiet the title to the properties in question.[2] The most that can be said for the dismissal of the plaintiff's action is that it has created a 46 foot "legal no man's land." While

---

2. In dismissing the plaintiff's action, the trial court observed:

   "The problem, of course, as you suggested in your argument, Mr. Kimball, is that it leaves the basic problem here between the parties, the location of this line, unresolved by the judgment of this Court. The judgment really here goes no further than in effect saying that the plaintiff failed in the necessary proof to establish their case, but the judgment cannot be construed as to

have declared or established that the position of the defendants in the matter is correct, either.

"Now, how and when this is to be resolved in the future will have to await the future. I foresee many problems of any further litigation arising out of this because of the plea of res judicata as against the defendants to file an action since they failed to file any Cross-Complaint." (Rptr. Tr. p. 223).

**664**

the parties must bear most of the responsibility for the incongruous status of this controversy because of their failure to properly plead and prove their claims, no judicial system can tolerate the result reached in this case which, for lack of a better description, could best be illustrated by what to date has always been thought to be a joking expression, "You can't get there from here."

Judgment is reversed and the cause remanded for a new trial. Each party to bear his own costs.

DONALDSON, C. J., and McQUADE and McFADDEN, JJ., concur.

SHEPARD, Justice (concurring in part, and dissenting in part).

I concur in that portion of the majority opinion which affirms the action of the trial court rejecting plaintiff-appellant's Exhibit I (a survey plat prepared by William Ashley and dated 1940). I further concur in the majority opinion wherein it affirms the action of the trial court in refusing to admit appellant's Exhibit No. 2 (a survey prepared by Milton Booth in 1966). I believe that the decision of the majority in affirming the aforesaid rulings of the trial court is dispositive of the case.

The opinion of the majority, however, then proceeds to a reversal of the action of the trial court on the basis that "a land owner is a competent witness to the location of the boundaries of his own land *if they are within his personal knowledge,* and may testify to the same." (Emphasis supplied) The majority opinion then correctly sets forth that a trial court, in ruling upon a motion made under Rule 41(b), may weigh the evidence. But the majority opinion then suggests that a trial court may not, however, disregard testimony *which was neither contradicted, impeached nor inherently improbable.*

The problem with that whole line of reasoning is that it was never presented to this court. The appellant did not in her assignments of error complain of the trial court's failure to consider her testimony.

However, even assuming that the matter discussed by the majority opinion was properly before this court, I disagree with the premise that the plaintiff-appellant was a competent witness. The record discloses that the matters purportedly testified to by her were not within her personal knowledge. I disagree that her testimony was "neither contradicted, impeached nor inherently improbable." Her testimony makes clear that she had no knowledge of the boundaries of her property other than hearsay from the county assessor in 1968. In 1965–66 she made no claim to the property in question. In fact she met with the defendants on the ground in question and they indicated to her the line which had been surveyed and staked out on the ground. She acquiesced in and accepted that boundary line and in the construction of the building. As she stated:

"Did you have any reason to doubt that this was *your* boundary line?

"No.

\* \* \* \* \* \*

"Did you have any reason to believe that this was not the line that was pointed out to *you?*

"No reason. If the surveyor said it, I figured it was law."

\* \* \* \* \* \*

"All of a sudden in 1968 you suddenly decided you owned this?

"Yes. After I talked to the assessor."

In contrast to the testimony of the plaintiff, the defendant Fountain was questioned as an adverse witness during plaintiff's case, and he testified that, prior to the time he sold the property to Horner, he (Fountain) had the boundaries surveyed, not once, but twice. He also testified that he knew the boundaries of the property and that they were as contended by the defendants.

I further disagree with the majority's evaluation of the testimony of witness

Booth. In my judgment the record demonstrates that his testimony was not only impeached and inherently improbable, but was incredible. He was a licensed land surveyor who was hired by Fountain to establish the boundaries of the property in dispute herein. He furnished a survey on the basis of which the property was sold and the house located. He then appeared at trial, testifying on behalf of the plaintiff Hook. He stated that the survey he had furnished Fountain, and to which he had affixed his official seal and signature, was false and that he knew it to be false at the time. The trial judge, probably finding such testimony difficult to believe, asked the witness:

"THE COURT: * * *, do I understand clearly that you affixed your seal and signature to that map although you did not believe it truly represented a true and accurate survey of the property on the ground?

"A. Right."

To summarize the above, it is my judgment that even if a consideration of this aspect of the case is pertinent, the plaintiff did not establish that the boundaries of her land were within her personal knowledge. I further believe that the testimony of both the plaintiff and the witness Booth was impeached, was more than inherently improbable, and was certainly highly suspect. The appellant did not carry the burden of proof required to support her complaint or any of its elements, and the motion to dismiss under Rule 41(b) was properly granted by the trial court. I would affirm.