Argued July 9, modified September 17, 1918.

## BERNITT *v.* CITY OF MARSHFIELD.*

(174 Pac. 1153.)

**Evidence—Parol—Plat—Ambiguity.**

1. Parol evidence, though inadmissible to change a plat of a city or town made by the owner of the property, in a collateral suit, is competent, under Section 713, L. O. L., to explain an ambiguity in the plat.

---

*On effect of improvements by abutting owner with reference to what is erroneously supposed to be the street boundary line to estop the municipality from asserting the true line, see note in 7 L. R. A. (N. S.) 243.        REPORTER.

**Evidence—Parol—Plat—Survey.**

2.  Parol evidence is competent to show survey of lines delineated on a map by dotted red lines.

**Evidence—Parol—Survey.**

3.  Evidence of where a survey actually ran is always competent, for purpose of showing lines and boundaries.

**Boundaries—Maps—Surveys.**

4.  If a map or plat does not agree with survey of the same as laid upon the ground at time of making map or plat, the survey must prevail in establishing the correct boundary of a lot or street, if position of points and lines established by survey can be proved.

**Boundaries—Evidence—Fences—Street Improvements.**

5.  In construing, interpreting, or resurveying an old map or plat, old fences, street improvements, lines of occupancy, etc., showing that the territory had for a long time been occupied under an evident and consistent survey of such plat, are strong evidence of location of original lines.

**Boundaries—Plat Copied from Another Plat—Survey.**

6.  When a plat is copied from another map, it is proper to consult the latter, and the survey made thereunder, to locate the boundaries.

[As to admissibility of ancient maps in evidence, see note in Ann. Cas. 1916C, 176.]

**Constitutional Law—Surveys—Vested Property Rights.**

7.  Where property is surveyed and platted, property rights vesting under such plat cannot be changed by a subsequent survey ordered by city.

**Municipal Corporations—Ordinances—Vacating Street—Dedication of Part of Street.**

8.  An ordinance attempting to vacate 10 feet on both sides of a street, and to dedicate such land to adjoining land owners, was merely revocable permit to prepare portion of street as a kind of parking, where city had no authority to vacate street or dedicate portion thereof, and where it had retained dominion over the narrow tract by preventing erection of structure thereon, except fence.

**Municipal Corporations—Attempted Dedication of Part of Street—Estoppel.**

9.  Where ordinance attempted to vacate 10 feet on both sides of a street, and to dedicate such land to adjoining land owners, and prescribed use to be made thereof by owners, but ordinance was unauthorized by its charter, and was mere permit, the improvement of the land by owners did not estop city from claiming land; such improvement being as directed by the ordinance, and not antagonistic to city.

From Coos:  GEORGE F. SKIPWORTH, Judge.

Department 2.

This is an appeal by defendants from a decree of the trial court enjoining the officials of the defendant city

from improving and grading approximately 609.8 feet of First Street North, formerly known as Pine Street. On July 12, 1915, the common council of the city of Marshfield declared its intention to improve said street according to plans then adopted, sixty feet in width and to grade down same approximately twenty feet, the proposed improvement to extend from the north line of Market to the south line of Alder Street, according to the Clement plat.

In 1854, one Wilkins Warwick made an entry under the Donation Act upon 160 acres of land, including what is now known as the Clement Plat. The Warwick entry and right to patent were contested by the inhabitants of Marshfield, who claimed the land under the town-site act, but the decision of the United States land office in 1876, was in favor of Warwick, and patent issued to him. In 1874, the town of Marshfield was incorporated, and the authorities thereof in 1875, during the pendency of the litigation, caused a plat to be prepared by S. B. Cathcart of a portion of the Warwick claim, referred to in the testimony as the Cathcart plat. It was never recorded in the county records, but was accepted by the city and kept in the office of the city recorder. In 1883, J. N. Knowles, who had succeeded to the Warwick title, through his attorney in fact, E. B. Clement, platted the same land as that covered by the Cathcart plat. This plat was duly recorded in the office of the county clerk of Coos County, and is known as the Clement plat, in which the streets, alleys, lots and blocks were named and numbered the same size and width as in the Cathcart plat, but in the latter plat the directions of the streets were north one degree east, while in the Clement plat they are claimed to be due north, and this difference, plus the attempted vacation of ten feet in width in

front of plaintiffs' respective tracts, under what is known as Ordinance No. 74 of the town of Marshfield, enacted February 11, 1886, gives rise to the present litigation.

The street in controversy is a short residence street in the old part of the City of Marshfield; upon this street were built the first residences of Marshfield, many of which are still standing. The street and adjoining lots are on a plateau which is from fifteen to twenty feet higher than the business part of the city.

MODIFIED.

For appellants there was a brief over the names of *Mr. Bennett Swanton, Mr. J. T. Brand* and *Mr. T. T. Bennett,* with an oral argument by *Mr. Swanton.*

For respondents there was a brief over the name of *Messrs. Peck & Peck,* with an oral argument by *Mr. Arthur K. Peck.*

BEAN, J.—Aside from the legal questions involved, the plaintiffs claim that the improvement is unjustified and will destroy the street for residence purposes; also, that the expense of the improvement would nearly confiscate the adjoining lots. The plaintiffs claim that the Clement and Cathcart plats are identical and that the street is laid upon the ground in accordance therewith.

The defendants claim that the Clement plat differs from the Cathcart plat in the location of the North and South Street lines, claiming that under the Clement plat the street lines run due north and south while under the Cathcart plat and Hall plat, made prior to 1875, they ran north one degree east.

In 1905, one Polley made a survey of the street under the direction of the city council according to their con-

struction of the Clement plat, making the north and
south lines of the  street run north one degree to the
west of the street lines as laid out on the ground.  The
city proposes to improve this street according to the
lines of the Clement plat as surveyed by Polley.

Plaintiffs, over the objections of defendants, intro-
duced testimony showing that the Clement plat was
made by an architect who copied a portion of the
Cathcart plat.  There was not a complete survey made
on the ground at the time the Clement plat was pre-
pared.  At that time John Hall, a surveyor, at the
instigation of the owner of the property, laid off the
lines of Pine and some other streets showing the front-
age and fence lines of the lot owners.  He took the
base line of the Cathcart plat as the same was then
established in the center of Pine Street and surveyed
the lines of the street a distance of 30 feet on either
side of such base line, and  parallel  thereto.  Along
these street lines he drove stakes or pegs.  This infor-
mation was furnished the draftsman of the Clement
plat and incorporated therein, the exterior lines of the
street and front lines of the lots being marked thereon
by a red dotted line.  There are no other bearings or
field-notes on the Clement plat.  The only other direc-
tions being the designation of the points of the com-
pass; the top of the map representing north.  Appar-
ently the lines of First Street, or Pine Street, as it
was then called, run north and south, or nearly so.
There is an iron pipe set in the ground at the south
end of the center line of Pine Street.  This is shown
on the Clement plat.  This  point is not in dispute.
The testimony shows that formerly there was such a
pipe set at the north end of this line as surveyed by
Cathcart and Hall.  The  improvements  on  Pine
Street, such as buildings, fences and sidewalks, have

been made to substantially conform to the Cathcart survey since about 1875.

By running the lines of the street due north, according to the Polley survey, they diverge to the west of the Cathcart line about two and four-tenths feet to each 100 feet as demonstrated by the survey of Mr. A. B. Gidley, a civil engineer, and the west line of the street would intersect several dwelling-houses situated on the lots of plaintiffs. Some of these houses have been occupied where they now stand since the seventies and eighties, having been remodeled and improved.

The reason of the objection of the defendants to the evidence of the Cathcart survey and plat is that parol evidence is not admissible to change a plat of a city or town, made by the owner of the property, in a collateral suit. This rule is unquestioned, but the Clement plat taken by itself is somewhat ambiguous. It is impossible to tell with the naked eye whether or not the lines of this street run exactly north and south.

1, 2. Oral evidence of the circumstances under which a writing has been made, or to explain an ambiguity, either intrinsic or extrinsic, is competent: Section 713, L. O. L., and notes.

It was peculiarly appropriate to explain the Clement plat by oral evidence. Such evidence did not change that instrument. It was also competent to show the survey of the lines of Pine Street by John Hall, which were delineated on the Clement map by red lines. It is clearly shown by the evidence that in making the Clement plat, a part of the Cathcart plat was adopted. The Cathcart survey, in so far as the same related to the land embraced in the Clement plat, was for all practical purposes also adopted. No other complete survey of the land was made. The portion surveyed by Mr. Hall conformed to the Cathcart survey, and

89 Or.—36

the dotted red lines on the Clement plat representing the exterior lines of Pine Street served as monuments representing the street lines upon the Clement map.

3–6. A surveyor must have data from which to make a survey, and cannot determine lines and fix monuments according to his own ideas. For the purpose of showing lines and boundaries, it can always be proven where the survey actually ran. If a map does not agree with the survey of the same as laid upon the ground at the time of making the map or plat, then the survey must prevail in establishing the correct boundary of a lot or street if the position of the points and lines established by the survey can be proved: 2 Devlin on Deeds (3 ed.), §§ 1020 and 1020a; *O'Farrel* v. *Harney,* 51 Cal. 125. In construing, interpreting or resurveying an old map or plat, old fences, street improvements, lines of occupancy, etc., showing that the territory had for a long time been occupied under an evident and consistent survey of such plat, are strong evidence of the location of the original lines: *Beaubien* v. *Kellogg,* 69 Mich. 333. When a plat is copied from another map, it is proper to consult the latter and the survey made thereunder, to locate the boundaries of the former: *McLane* v. *Grice* (Tex. Civ. App.), 66 S. W. 709.

7. The action of the city council of Marshfield in causing a survey by Polley in 1905 cannot change the property rights of the plaintiffs as they have vested under the original Clement plat as it was laid out upon the ground by John Hall, the surveyor: *Sheridan* v. *Empire City,* 45 Or. 296, 300 (77 Pac. 393).

We concur in the finding of the trial court that the lines of First Street North, as surveyed by Cathcart and Hall, are the true boundaries of the street, as represented upon the Clement map.

First Street, or Pine Street, was originally dedicated sixty feet in width.   In February, 1886, the board of trustees of the town (now city) of Marshfield passed Ordinance No. 74, providing for the improvement of a portion of Pine Street.   By Section 9 of this Ordinance, it was declared as follows:

"That the ten (10) feet in breadth on the East and West sides of said Pine Street and not included in the forty feet heretofore mentioned be and the same is hereby vacated for the purpose of improving the appearance and breadth of said street and that the said ten (10) feet be and the same is hereby dedicated other adjoining lot owners. * * Provided, and such vacation and dedication is made with the distinct provision that no buildings shall be erected, moved on to or permitted to remain on any portion of said strip of ten feet and that nothing in the shape of a structure save and excepting a fence, not to exceed in height 4½ feet shall be built thereon.   And it is further provided that should any of the adjoining lot owners permit or allow any of the provisions aforesaid to be broken or in any way violated the said strip of ten (10) feet fronting his said lot shall immediately revert to and vest in said town as though the vacation and dedication therein had not been made, during the continuance of such violation and this section is enacted subject specially to the provisions and restrictions aforesaid."

8. Afterward the adjacent lot owners moved their fences so as to embrace the 10-foot strip and planted lawns and shrubbery thereon.   Defendants contend that the action of the city officials as to the vacation of the 10-foot strip was void.   The first charter of Marshfield enacted by the legislature in 1874 authorized the board of trustees to "lay out and open streets." No authority was given by the charter to vacate a street.   Amendments to the charter were made by the lawmakers of the state in 1876 and 1880, but no power

was conferred upon the board of trustees to vacate a street, or dedicate a portion of such a highway to adjoining lot owners. Moreover from the language of the ordinance quoted above, it appears to have been the real intention of the municipal officials to permit a restricted use of the 10-foot strip in question by the adjacent property owners, or to ordain, what they seemed to have termed, a temporary vacation. It does not appear by the language used that it was the purpose of the city authorities to relinquish the right to the control over that portion of the street. Ever since the passage of Ordinance No. 74, the property owners adjoining that part of the street affected, by their occupancy of the 10-foot strip have necessarily recognized, and acquiesced in, the right of the city to prevent the erection of any building or other structure thereon except a fence. In this way the municipality has held dominion over the narrow tract for street purposes during that time. The effect of Ordinance No. 74 was no more than a revocable permit to prepare a portion of the street as a kind of parking. In 1903, the city council of the City of Marshfield after ordering a certain structure removed from a street declared that the pretended vacation of the strip was null and void, and revoked the same, and ordered the sidewalks to be removed to the outer line of the street. It does not appear that the 10-foot strip on each side of Pine Street was ever legally vacated. The trial court held that the city was restricted to the improvement of the street as only 40 feet in width.

The contention of the plaintiffs is that the city is equitably estopped from asserting a right to the 10-foot strip as a street by reason of its laches. The rule in regard to laches in a matter of this nature is

stated by Mr. Chief Justice BEAN in *Oliver* v. *Synhorst,*
48 Or. 292, at page 297 (86 Pac. 376, at page 378, 7
L. R. A. (N. S.) 243), as follows:

"But, while the rule may be that the ordinary stat-
ute of limitations as such cannot be set up to defeat
the right of the public to the use of a street or high-
way, there may grow up, in consequence of the laches
of the public authorities, private rights of more per-
suasive force in the particular case than that of the
public, and if 'acts are done by an adjoining propri-
etor which indicate that he is in good faith claiming
as his own that which is, in fact, a part of the highway,
and is expending money on the faith of his claim, by
adjusting his property to the highway as he supposes
or claims it to be, the public will be estopped' ": Cit-
ing authorities.

9. The plaintiffs invoke this rule, but the facts in the
present case do not bring it within such announcement.
The rule in regard to laches in such cases is some-
what analogous to that prescribed by the statute of
limitations.  The use of the street in question by the
adjoining property owners was made as directed by
the ordinance of the city.  It was not antagonistic to
the municipal rights.  The improvements were made
with the permission of the city, therefore the rule does
not apply.  The recognition of the dominion by the
city government over the part of the street by the
adjacent lot owners does not indicate that such prop-
erty owners were claiming that part of the street as
their own property, but showed the reverse.  The ex-
penditure made in adorning the "parking" or side of
the street, with grass and shrubbery was in consonance
with the provisions of Ordinance No. 74.

We hold that First Street North, formerly Pine
Street, is 60 feet in width.  With the modification as to
the width of the street as specified, the decree of the

lower court should be affirmed. Plaintiffs are entitled to recover their costs in this court. It is so ordered.

MODIFIED.

McBRIDE, C. J., and BENSON and JOHNS, JJ., concur.