Argued March 19, affirmed June 25, rehearing denied July 30, 1929.

## W. TEMPLEMAN ET AL. *v.* R. S. LEIGH.

(278 Pac. 989.)

For appellant there was a brief and oral argument by *Mr. O. A. Neal.*

For respondents there was a brief over the name of *Messrs. Bronaugh & Bronaugh,* with an oral argument by *Mr. Earl C. Bronaugh.*

RAND, J.—This is a suit to quiet title to a certain parcel of land in block 2 in Park Addition to Albina, now in the City of Portland, and from a decree in favor of plaintiffs, defendant has appealed.

Both plaintiffs and defendant claim title to the premises in controversy. The controversy grows out of the following facts: There have been two plats filed of the Park Addition to Albina. James Steel and Mary L. Steel, his wife, were the original owners of the land platted. On September 9, 1882, they filed the original plat for record and on December 17, 1887, they filed an amended plat of said Addition, stating in the amended plat that it "shall take the place of and be a correction of a former map and dedication of Park Addition to Albina." Prior to the filing of the amended plat, and on January 3, 1883, Steel and wife conveyed by deed lot 23 of block 2 of said Addition to Leslie Smith, from whom plaintiffs deraigned title. On January 31, 1884, Steel and wife conveyed lots 2, 3, 14 and 15 of said block 2 to Mary V. Lee and defendant deraigns title from her. Both deeds recite and acknowledge the payment of a money consideration. Smith's deed was immediately placed of record while Lee's deed was not placed of record until nearly three months after the filing of the amended plat. The defect sought to be cured by the filing of the amended plat was that the original plat failed to designate the initial

point of the survey of the Addition and it was impossible from anything contained in it to ascertain what particular ground was covered by the Addition. It designated the initial point in these words: "Initial Pt. in South Boundary Line of Sec. 16 T. 1 N. R. 1 E. distant —— Rods East of 1/4 Sec. Cor. betw. Sec. 16 and 21." How far east of the quarter-section corner between sections 16 and 21 the initial point was was left blank, and hence there was no way of determining the commencement point of the survey and plat. All of the parties to the original transaction have long since died and it is claimed that there is no witness living having personal knowledge of the surrounding circumstances as they existed at the time of these transactions. Whether the lots and blocks, or any of them, were staked out or marked on the ground is unknown. The lands platted were remote from any settlement then existing. The original plat designated certain streets by names, which names have since been changed. Whether at the time such streets had been projected or improved is also unknown. There is no evidence to show that Steel ever exhibited to either of his grantees the particular land he was attempting to convey or placed either of them in possession of any particular tract. The amended plat as filed was an exact duplicate of the original plat with two exceptions, which were that it designated the initial point with certainty and it changed the numbering of the lots on the east side of the blocks. Under the original plat the lots on the west side of the block were numbered consecutively from 1 to 12, commencing at the south end of the block, and the lots on the east side of the block were numbered consecutively from 13 to 24, commencing at the north end of the block, while, under the amended

plat, the lots on the west side of the block were numbered the same way as in the original plat but those on the east side of the block were numbered consecutively from 13 to 24, commencing on the south end of the block instead of at the north and as in the original plat. In other words, what had been lot 14 on the original plat appeared as lot 23 on the amended plat. Lot 23, as delineated on the amended plat, is the lot which is in controversy here.

So far as the evidence in this case shows, no grantor of either plaintiffs or defendant took actual possession or performed any act of ownership over any particular lot or part of block 2 before making conveyance to the parties to this suit. It appears from the evidence that in 1908, defendant, by mesne conveyance from Lee, acquired title to lot 14 of said block 2, and some two or three years before the commencement of this suit plaintiffs acquired title to lot 23 of said block. It further appears from the evidence that what had been designated upon both the original and amended plats as Division Street had been changed to Killingsworth Avenue and that Killingsworth Avenue had been improved and that an improvement district extending 100 feet therefrom to the north had been established by the city as the property to be charged by local assessment for said improvements. Lot 14, as shown by the amended plat, was within the district and was then claimed by the defendant, while lot 23, as shown on the amended plat and which is now claimed by plaintiffs, was not within the district. After said assessment had been made and lot 14, as shown by the amended plat, had become subject to the payment of such assessments, defendant, claiming to be the owner thereof, appeared before the city auditor and filed a written application to have the amount of said

assessment bonded so that the same could be paid in installments. Subsequently thereto, defendant paid a part of said installments and defaulted as to the others, whereupon a suit to foreclose the lien against said lot was brought by the city and personal service of summons was had upon the defendant and defendant made default in said suit and decree was entered foreclosing the lien and directing the sale of said lot 14, as shown by the amended plat, and that the city has since acquired title thereto by reason of such foreclosure and sale.

It further appears from the evidence that about two years prior to the commencement of this suit, plaintiffs took possession of what is delineated on the amended plat as lot 23 of block 2 and erected a dwelling-house thereon in which they have since lived and that it was not until after the erection by plaintiffs of the dwelling-house and defendant's loss of title to what is lot 14 as delineated on the amended plat that he claimed title to plaintiffs' lot. It also appears from the evidence that assessments are made and taxes levied against the several owners on the east side of block 2 according to the numbering of the lots by the amended plat and not in accordance with the numbers shown on the original plat. It appears from an inspection of the two plats that lots 2, 3, 14 and 15 of block 2, which were conveyed by Steel and wife to Lee, as shown on the amended plat, form a contiguous body of land, while by the original plat lots 2 and 3 are separated by several hundred feet from lots 14 and 15.

It is defendant's contention that this case is controlled by the decision of this court in *Miller* v. *Fisher,* first reported in 77 Or. 532 (151 Pac. 971), and again reported in 90 Or. 111 (174 Pac. 1152).

The first decision involved merely the question of the sufficiency of a complaint when attacked by demurrer, in a suit to stay an action at law. In the last decision it was in effect held that in the absence of extrinsic evidence the deeds themselves were controlling and that it must be assumed that Steel's grantees "bought and acquired title to the lots described in their respective deeds and as the same appear on the then recorded map or plat thereof," referring, of course, to the original plat. In this case we are not so limited for there is parol evidence of subsequent acts of both plaintiffs and defendant, many years after the deeds were given, which show the practical construction that they themselves have placed upon these deeds, which acts can be explained only upon the theory that not only plaintiffs but also the defendant claimed title to the lots in accordance with their numbers as they appear on the amended plat.

■ ■ It must be borne in mind that Steel, the original owner of the land, conveyed four lots to Lee, through whom the defendant deraigned title, and another lot to Smith, through whom plaintiffs claim, and that he described these lots and the block in which they were situate by number only. There was no uncertainty or ambiguity in the descriptive clause of either deed. Each deed purported to convey a certain lot or lots in block 2 in Park Addition to Albina in the county of Multnomah, State of Oregon, but at that time the Addition itself was invalid because having no designated initial point of its location and survey and, so far as the evidence shows, there was no way to identify its location with any degree of certainty whatsoever. It is a principle of general application that the description in a deed

of the premises conveyed must be sufficiently definite and certain to enable the land to be identified; otherwise, it will be void for uncertainty. It is another rule of general application that a deed may refer to another deed or a map or plat for a description of the land ·conveyed and the deed, map or plat to which ·reference is thus made is considered as incorporated in the deed itself: 2 Devlin on Deeds (5 ed.), § 1020.

■ ■ Upon applying the description of the lots which Steel attempted to convey to the plat and survey of the Addition, a latent ambiguity in the description contained in the deeds arose from the fact that the beginning point of the survey and plat of the Addition could not itself be identified. The deeds, therefore, at the time of their execution were void for uncertainty and, hence, no present title passed to either of said grantees. Of course, it is barely possible that Steel may have put his grantees in possession of some particular lot or lots, and if he did so, the taking and holding of such possession might have rendered certain what otherwise would have been an uncertain description, as held in *Richards* v. *Snider,* 11 Or. 197 (3 Pac. 177). But there is no evidence or presumption of law or fact that he did so. Hence, so far as the evidence in this case shows, there was an attempt by Steel to convey certain lots without the passing of title to any particular lot or lots. The deeds, however, on their face show that they were executed for a valuable consideration and, upon the resulting failure of consideration arising from failure of the deeds to pass title to the property attempted to be conveyed, the grantees had a right of action against Steel to recover the money so paid.

■ Whatever other legal or equitable remedies they

may have had, if any, are of no importance. The material thing is that they had a right of action against Steel by reason of his failure to convey the title to the property which he attempted to convey. Now, under this aspect of the case, Steel had the right with the consent of his grantees to cure this defect by filing an amended plat properly identifying and describing the lots in said Addition. This, the evidence shows, was done. Whether with or without the consent of the grantees involved here is not known. But it is known that no action or suit was brought questioning the validity of the amended plat and the change which was made in the numbering of the lots and, so far as the evidence shows, no objection has ever been made thereto by anyone.

From this we think we have the right to infer, there having been no suit brought or objection made, that this change in the numbering of the lots was consented to and acquiesced in by each of said grantees of Steel, particularly so after the lapse of so long a period of time and the death of all of the parties having any knowledge of the transactions. In view of these considerations and of the acts of the defendant in his claim of ownership of the particular lot which is numbered 14 on the amended plat, we hold that plaintiffs are the owners of the lot delineated upon the amended plat as lot 23 and that the defendant has no right, title or interest in the same or any part thereof.

For these reasons, the decree appealed from will be affirmed. Affirmed. Rehearing Denied.

Belt, McBride and Rossman, JJ., concur.