Argued May 6, affirmed June 12, 1963

PARRISH *v.* MINTURN ET AL

382 P. 2d 861

*Joseph Larkin,* Redmond, argued the cause for appellant. With him on the briefs were Cunning, Brewster, Copenhaver & Larkin and George H. Brewster, Redmond.

*James B. Minturn,* Prineville, argued the cause for respondents. With him on the brief was James F. Bodie, Prineville.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

O'CONNELL, J.

This is a suit to quiet title to a ranch in Crook county. Plaintiff alleges that he acquired title by adverse possession. The trial court concluded that plaintiff's possession was not adverse and entered a decree for defendants. Plaintiff appeals.

Plaintiff purchased the land in question in 1917. In 1931 he deeded the land to his son, Edwin C. Parrish. Edwin died on January 30, 1960. Defendant James Minturn is the administrator of the estate of Edwin C. Parrish. Defendant Vivien Parrish is Edwin's widow.

Approximately two years after the execution of the deed by plaintiff Edwin left the ranch and moved to Redmond, Oregon where he lived for almost eight years. Eventually he moved to California where he died in 1960. Plaintiff described Edwin's intention upon leaving the ranch as follows:

"* * * He run the place two summers. I tried to get him to stay and he wouldn't do it. He says, 'There's nothing in farming. You can take it and do what you want to with it. Run it.' He says, 'I'm done.' Well, I said, 'You better give me a deed to it then.' 'Well,' he says, 'I'll do that too.'
* * * * *
"* * * 'No,' he says, 'there is nothing in this farming.' He says, 'Look at how I have worked here and ain't made a dollar.' And, he says, 'I'm

going to go and work out for wages.' And he says, 'You can take the place and do what you want to with it.' So—I says, 'Well, I'll—if I'm going to take it, then I want a title to it.' 'Well,' he says, 'you will get one.' "

After Edwin left plaintiff continued to live on the ranch until about 1942 when he leased it to a tenant. During this entire period plaintiff paid all taxes and water charges. He collected the rent and never accounted to Edwin for any part of it. Plaintiff constructed a house on the property at a cost of $1,600, doing most of the construction work himself. Plaintiff testified that on several occasions Edwin had agreed to give him a deed to the ranch. We have set out above a part of this testimony. Plaintiff further testified that on one occasion he and Edwin went to Prineville to have the deed executed. He said, "We went to Prineville to have this deed made out at Bechtell's. Bechtell always done my business. And he was out of town. He was out of town and we never went back." Plaintiff also testified that, "We had some papers fixed up, it was, and he was to give it back to me." The testimony continued as follows:

"Q Where did you have them [the papers] fixed up?
"A Well, he—wrote it up himself.

"Q Did you ever see it?
"A Yeah.

"Q What did it say?
"A I don't know, just in regard to he would deed it back to me.
\* \* \* \* \*

"Q Do you know what the paper said?
"A No, I don't know. It was just in regard to the—as soon as he got a little time, he—we would have a deed fixed up there.

"Q But he didn't actually deed it to you, did he?

"A No.

"Q And he just said sometime in the future he would give you a deed, is that it?

"A Yeah, Yeah, that's about the size of it."

Loren Parrish, plaintiff's son, testified that his brother Edwin told him, "Well, I have got to deed it back to the old man one of these days," and that "He said he should get it done." Loren Parrish also corroborated plaintiff's statement that plaintiff and Edwin had gone to Prineville to have a deed executed.

Rose Gibson (whose husband was the brother of plaintiff's deceased wife), testified that sometime after 1952 she had discussed with Edwin the ownership of the ranch. She reported the conversation as follows:

"A And he said that he wouldn't ever give it back to his father because he said he knew as long as he kept that ranch his father had a living and a home.

"Q He always wanted his father to live on it for his lifetime, didn't he?

"A That's what he said. He would never put his father off of that place, he would live there as long as he lived. And I asked him at that time if he ever had talked to his family about it and he said, yes, Vivien [Edwin's wife] understood, that he wanted her to let his father live on there as long as he lived."

Defendant Vivien Parrish testified that her husband, Edwin, had told her that he wanted his father to live on the ranch for the remainder of his life. It further appeared from the testimony of Rose Gibson that Edwin had borrowed money from her and her

husband in 1942 and that Edwin had given them a deed to the ranch as security for the loan.

■■ The sole issue in the case is whether plaintiff has met the burden of proving that his possession was adverse rather than permissive. If a grantor is permitted by the grantee to retain the possession of the land conveyed, his possession is generally treated as being in subordination to the interest of his grantee unless the grantor indicates by words or conduct his intention to hold the land as his own and this indication is brought to the grantee's attention.[1] In some cases a heavier burden of proof has been imposed upon the grantor when the conveyance is made between members of a family. The rule is summarized in 39 ALR2d at 385 (1955), as follows:

> "Where, in addition to the grantor-grantee relationship between the parties, it is shown that they were also in a position of family relationship, some of the courts have appeared to be especially reluctant to find that an adverse title arose from the continued occupation and use of the property by the grantor after conveyance."

The evidence in the present case does not unequivocally indicate that plaintiff's possession was adverse after Edwin had left the ranch. If we accept Rose Gibson's testimony (and she appears to have less interest in the outcome of the case than the other witnesses who testified as to the character of plaintiff's possession), we must conclude that Edwin regarded plaintiff's possession as that of a life tenant. As a life tenant plaintiff could be expected to pay the taxes and other charges incident to the use of the

[1] Reid et al v. Reid, 219 Or 500, 348 P2d 29 (1959); Gardner v. Wright, 49 Or 609, 91 P 286 (1907); 39 ALR2d 354 (1955); 3 American Law of Property, p. 801 (1952); 4 Tiffany, Real Property § 1182 (3d ed 1939).

premises and plaintiff's expenditure of $1,600 to construct a building on the land can be explained as a reasonable and expectable expenditure by one who will profit by it in the form of rental income. The fact that Edwin mortgaged the ranch in 1942 is some evidence that he regarded himself as still the title holder at that time.

■ Accepting plaintiff's version of the case, Edwin made an oral gift of the ranch to plaintiff upon leaving in 1933. A parol gift of land is sufficient to inaugurate adverse possession.[②] In the instant case the evidence of an oral gift comes from those who would profit by such proof. And defendants have no way of contradicting the testimony of plaintiff and his son Loren as to Edwin's statements of his intention to make a gift of the ranch as Edwin is dead. The credibility of the witnesses becomes crucial under these circumstances. The trial judge had the opportunity to observe the witnesses and is in a much better position to pass upon their credibility. Even on the cold record, plaintiff's testimony set out above relating to the execution of a "paper" evidencing the alleged gift seems unconvincing. The other testimony offered by plaintiff to establish a gift of the land upon Edwin's departure is not strong. Taking the evidence as a whole, the intention to make an oral gift of a life estate is as strong or stronger than the intention to transfer Edwin's entire ownership. And the evidence showing a gift of any type is not convincing.

Plaintiff has failed to meet the burden of proof requisite to the establishment of adverse possession. The decree of the lower court is affirmed.

[②] Miller v. Conley, 96 Or 413, 190 P 301 (1920); Parker v. Kelsay, 82 Or 334, 161 P 694 (1916). Cases are collected in Annotation 43 ALR2d 16-20 (1955).