Argued February 5, reversed and remanded March 24, petition
for rehearing denied April 20, 1971

O'HARA ET UX, *Respondents, v.* BRACE ET AL,
*Appellants.*
482 P2d 726

*J. Christopher Minor,* Newport, argued the cause for appellants. With him on the briefs was Fred Allen, Newport.

*W. T. Hollen,* Newport, argued the cause for respondents. With him on the brief were MacPherson & Osterlund, Toledo.

TONGUE, J.

This is a suit to quiet title in which defendants pleaded as an affirmative defense that they were owners by adverse possession of a portion of the land claimed by plaintiffs to be owned by them. The trial court found that plaintiffs were the owners of the property in dispute. Defendants appeal from the resulting decree.

The principal issue to be decided is whether plaintiffs established title to the lands claimed by them and, in particular, the west boundary of such lands.

In 1943 defendant Mary Brace and her husband purchased "Lot 4" as "tax property" from Lincoln county. At that time there were no accurate surveys in that area that had been "tied in" with the corners of the section of land which included that tract. In 1945 Mr. and Mrs. Brace purchased from the school district an abandoned school house located in the westerly portion of Lot 4 and which had been excluded in the previous purchase. No description of the boundaries or corners of Lot 4 was offered in evidence.

After some years Mrs. Brace, then a widow with three children, deeded the eastern portion of Lot 4 to her daughter and her son-in-law, O. H. Marr. The boundaries of that conveyance were determined by beginning at a fence line on the east side of the tract and which was apparently regarded at that time as its true east line. From that fence line Mr. Marr and Mr. Kent, her other son-in-law, "stepped off" the area conveyed by the Marr deed, which was also not offered in evidence.

In 1955 Mrs. Brace deeded another portion of that tract to her other daughter and her husband, Robert L. Kent. The area deeded to Kent was

"measured from the Marr line," again without a survey, and the sole starting point of the description set forth in that deed was "the southwest corner of the tract of land conveyed by Mary Brace to O. H. Marr and Virginia Marr," with reference to the book and page of the deed records in which it was recorded. Subsequently, that tract was sold by the Marrs to another purchaser.

In 1962 Mr. and Mrs. Kent conveyed that portion of the original tract to plaintiffs by deed with the same description, including the same starting point. Prior to the purchase of that property by plaintiffs, a surveyor, Mr. Hanna, had been employed by the owner of the Marr tract to survey the line between the Marr tract and the Kent tract. From that line Mr. O'Hara and Kent "paced off" 640 feet so as to find the approximate location of the west line of the property to be included in that deed. Mr. Hanna's survey of the east line was not offered in evidence and he testified that at that time there were no accurate surveys or monuments in that area to "tie to."

Plaintiff Alexander O'Hara testified that upon "pacing off" the 640 feet from the east line, as so established, it appeared that the west line would include the old school house, which he knew had been lived in by Mrs. Brace as her home, and that the line ran between that house and the barn also previously used by Mrs. Brace. He also testified that he called this to the attention of her son-in-law, Mr. Kent, who made no representation as to the location of that line, but at first did not want to sell because of that. Plaintiff also testified that since the price had already been agreed upon, Mr. Kent then asked if Mrs. Brace could continue to live in the old school house; that plaintiff agreed, and that the sale was then completed on that

basis, and with the understanding that plaintiffs had purchased the same tract that she had previously conveyed to the Kents.

Mrs. Brace, however, testified that although at the time of that sale Mr. Kent "discussed" the fact that she would be able to live in the old school house as long as she wanted to, she understood that the west boundary of the portion of the tract deeded to Kent was about 100 feet east of the old school house and did not include either it or the barn and that she had so informed Kent.

For a time Mrs. Brace continued to live in the old school house. Her son, Dan Brace, then came to live with her. Plaintiff O'Hara testified that in 1964 he told Mrs. Brace and her son that the old school house was on his property. He also testified that in 1967 he learned that Mrs. Brace was no longer living in the old school house (as he had agreed with Mr. Kent that she might do), so "decided to take it."

Plaintiffs then engaged Mr. Larson, a registered land surveyor employed by a lumber company, to make a survey and establish the west line of the property. Mr. Larson then proceeded to survey that and several other tracts in the area. The methods adopted by Mr. Larson in making that survey are discussed in detail below. He then prepared a map of the area, including the O'Hara tract, and showing that its west line included the old school house and ran through the barn to the west of it. That map was received in evidence without objection by defendants and defendants' surveyor conceded that prior to the Larson survey "there wasn't anything you could tie down."

Upon completion of the Larson survey in 1967 there were further discussions between the parties which are not material to the basis for decision of the

case. Defendants also offered additional evidence in support of the affirmative defense of adverse possession and which is also not material to the basis on which this case is decided.

Upon the question whether plaintiffs' evidence was sufficient to establish title to the property claimed to be owned by them, we must start with the elementary rule that in a suit to quiet title to real property the burden is upon the plaintiff to establish such title and that he must do so on the strength of his own title and not on the weakness of defendant's title. *Freytag v. Vitas*, 213 Or 462, 466, 326 P2d 110 (1958).

Defendants contend that plaintiffs failed to sustain that burden of proof for three reasons: (1) because the description of plaintiffs' land, as set forth in the deed to them from the Kents, depends upon the description of the Marr tract, as set forth in the deed from Mrs. Brace to the Marrs, which was not in evidence; (2) because plaintiffs' surveyor did not establish by his testimony that he followed correct methods in the making of his survey; and (3) because the previous deeds from Mrs. Brace to the Marrs and the Kents were based upon the assumption that the starting point for these deeds was a fence line, which was a "landmark" used by the parties as the point of beginning (i.e., as a matter of "practical location") and thus should have been used in any later survey, regardless of whether or not that fence was on the actual boundary of Lot 4.

■ In response to the first of these contentions, it is clear that the description of the land conveyed by plaintiffs' deed was not insufficient for lack of certainty by reason of the fact that it referred to the description of land conveyed by another deed for the point of beginning of the land to be conveyed by the

deed in question. *Templeman et al v. Leigh*, 130 Or 24, 29-30, 278 P 989 (1929), and 2 Devlin on Real Estate (3d ed) § 1020.

■ Furthermore, it is the established rule that the courts will be liberal in construing descriptions of premises conveyed by deed and that a description of land is sufficiently definite and certain if it is possible for a surveyor to ascertain from the description, "aided by extrinsic evidence," what property was intended to be conveyed. *Sequin et al v. Maloney-Chambers*, 198 Or 272, 281, 253 P2d 252 (1953).

Thus, as stated in *Bogard v. Barhan*, 52 Or 121, 96 P 673 (1908), the test is:

> "Can a surveyor, with a deed or other instrument before him, with or without the aid of extrinsic evidence, locate the land and establish the boundaries?"

See also *Hamilton et al v. Rudeen et al*, 112 Or 268, 272, 224 P 92 (1924).

■ From this it follows that it was not necessary for the Marr deed to be offered in evidence if a surveyor, by reference to that recorded deed and other "extrinsic evidence," could locate the O'Hara tract and establish its boundaries. Thus, the crucial question in this case is whether the testimony of plaintiffs' witness, Mr. Larson, as a private surveyor, was sufficient to demonstrate that by reference to such "extrinsic evidence" he was able, by the use of proper methods, to locate the O'Hara tract and establish its corners.

■ In determining the sufficiency of the testimony of Mr. Larson for this purpose it is also important to note that in this case the "point of beginning," as set forth in the O'Hara deed, is not a corner established

by a public survey. As a result, it became necessary to locate that corner by the proper and established methods, so as to require consideration and application of the following test, as stated by this court in *Seabrook v. Coos Bay Ice Co.*, 49 Or 237, 242, 89 P 417 (1907):

> "The surveyor, in testifying in relation thereto, must state more than the result, he must detail his survey in locating such corner, and it will then be a legal question whether his method is correct and a question of fact whether the result is correct * * *."

To the same effect, see *Gallagher v. Kelliher*, 58 Or 557, 561, 114 P 943 (1911), and Devlin, *supra*, 1955, § 1020. See also *Bernitt v. City of Marshfield*, 89 Or 556, 562, 174 P 1153 (1918).

■ It is also the rule that where, as in this case, there were no previously established monuments to identify the point of beginning of the O'Hara tract, the court "must look to the courses and distances from those corners which are known and established in order to locate the corner in question." *Kincaid v. Peterson*, 135 Or 619, 627, 297 P 833 (1931). Indeed, this court has held surveys to be insufficient for failure to satisfy this rule. See, for example, *Seabrook v. Coos Bay Ice Co.*, *supra*, and *Longview Fibre Co. v. Johnston*, 193 Or 385, 392, 238 P2d 722 (1951).

■ Finally, it must be remembered that the map as prepared by Mr. Larson was a private survey map and although it was received in evidence without objection and was admissible to illustrate and explain the testimony of Mr. Larson as the surveyor who prepared that map, it had no more probative weight than the testimony of the private surveyor who prepared it. See Clark on Surveying and Boundaries (3d ed)

341, § 313, and 9 ALR2d (Anno) 1089. See also *Rowland v. McCown et al,* 20 Or 538, 540, 26 P 853 (1891); *Banks v. Watrous,* 134 Conn 592, 59 A2d 723 (1948); *Durden v. Kerby,* 201 Ga 780, 41 SE2d 131 (1947); and *Taubert v. Fluegel,* 122 Ill App 2d 298, 258 NE2d 586 (1970).

Upon examining the testimony of plaintiffs' surveyor, Mr. Larson, in the light of the foregoing rules, it first appears that he testified that he established the center, or center quarter corner, of section 30 by running meander lines along the shores of Yaquina Bay between the opposite corresponding quarter corners on the east and west lines of that section and also by "tying" it to the quarter corners on the north and south lines of the section. He did not, however, give any details as to distances and courses on any of the lines run by him for that purpose or offer his field notes in evidence to establish such details.

But even if it be assumed that Mr. Larson properly established the center, or center quarter corner, of section 30, his testimony as to how he then proceeded to establish the beginning of the O'Hara tract was much more vague. Thus, he testified that:

> "From that point (the center quarter corner) I calculated the northwest corner of Lot 3, which would be the northeast corner of Lot 4, * * *."

Although the map prepared by Mr. Larson shows the various courses and distances which may have been followed by Mr. Larson in thus "calculating" that corner, there was no evidence to show the what, if any, "extrinsic evidence" was used by him as the source of such courses and distances. No document setting forth a description of either Lot 3 or Lot 4 was offered in evidence and there was no testimony that Mr. Larson consulted any such document, whether

recorded or not. To confuse matters further, even the map prepared by Mr. Larson reveals what appears to be an unexplained "gap" of some unspecified distance between what is shown to be the northwest corner of Lot 3 and the northeast corner of Lot 4.

Furthermore, no explanation was given by Mr. Larson as to how he proceeded from the northeast corner of Lot 4 to determine the "beginning point" of the O'Hara tract on the southwest corner of the Marr tract. Again, although his map shows certain courses and distances, there was no testimony to show what, if any, "extrinsic evidence" was used by him as the source of such courses and distances, whether from the Marr deed or otherwise. The "Marr tract" is not even identified as such on the map.

Indeed, the only reference by Mr. Larson to the Marr tract, as such, was in cross-examination, when he testified, in response to questions by defendants' counsel, that the description in the O'Hara deed uses "as a starting point" a reference to "the deed from Brace to Marr," so that, "taking it as a whole, * * * any relevancy or accuracy of the Kent (O'Hara) tract from the O'Hara description would depend upon the location of the Brace to Marr description." Since, however, there was no evidence of what the description was, either by offering the Marr deed in evidence or otherwise, we conclude that the boundaries of the O'Hara tract, including the west boundary of that tract, were not properly or sufficiently established by the testimony of plaintiffs' surveyor, upon which his proof must rest under the facts of this case.[1]

---

[1] Plaintiffs cite Brown v. Dorfman, 251 Or 522, 525, 446 P2d 672 (1968), for the proposition that a landowner may testify "with regard to his property lines." That case, however, involved an

■ Defendants pleaded as an "affirmative defense" that they are the owners by adverse possession of a portion of the lands in question, as described in their answer. They also pray for entry of judgment declaring them to be the owners of such lands. Upon examination of the record, however, we find that the evidence offered by defendants was not sufficient to satisfy the requirements of adverse possession, as stated in *Reeves v. Porta*, 173 Or 147, 144 P2d 493 (1944); *Reid v. Reid*, 219 Or 500, 348 P2d 29 (1959); and *Parrish v. Minturn*, 234 Or 475, 382 P2d 861 (1963).

■ Because of the basis on which this case is decided it is not necessary to consider defendants' further contention that since the original starting point for both the Marr and Kent deeds was a fence on the east boundary of the original Brace tract, the boundary lines in question should be determined by "practical location," with reference to that fence, as well as defendants' contention that there had been such a mistake as to require reformation of the deeds. It should be noted, however, that neither of these contentions was pleaded, as necessary for consideration. See *Kingsley v. Jacobs*, 174 Or 514, 529, 149 P2d 950 (1944), and *O'Gorman v. Baker et ux*, 219 Or 170, 189, 347 P2d 85 (1959).

---

action for damages for trespass, in which right to possession was sufficient to support plaintiff's right to file such an action. Thus, that case does not stand for the proposition that such testimony would be sufficient to establish a disputed boundary line in a suit to quiet title.

Plaintiffs also contend that defendants' surveyor admitted the accuracy of plaintiffs' survey. As we read the testimony of that witness, however, he went no further than to agree that prior to the Larson survey there were no accurate surveys in the area. In any event, such testimony by a witness was not binding on defendants as a judicial admission.

Since, in our opinion, plaintiffs failed to sustain their burden to establish the boundaries of the property owned by them, including the west boundary in dispute in this case, it follows that decree of the trial court must be reversed and this case remanded with instructions that plaintiffs' complaint must be dismissed.

McAllister, J., concurs in the result.