IN THE TAX COURT OF THE
STATE OF OREGON

AVIS RENT A CAR SYSTEM, INC.,
Budget Rent a Car System, Inc.,
Dollar Rent a Car,
and The Hertz Corporation
*v.*
DEPARTMENT OF REVENUE
*and*
MULTNOMAH COUNTY ASSESSOR,
a political subdivision of the
State of Oregon,
*Intervenor*
(TC 4138)

NATIONAL CAR RENTAL SYSTEMS, INC.
*v.*
DEPARTMENT OF REVENUE
*and*
MULTNOMAH COUNTY ASSESSOR,
a political subdivision of the
State of Oregon,
*Intervenor*
(TC 4139)

Lynda N. Gardner and James N. Gardner, Gardner & Gardner, Portland, represented Plaintiffs Avis Rent A Car System, Inc., et al.

Timothy E. Miller, Miller & Associates, Lake Oswego, represented Plaintiff National Car Rental Systems, Inc.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented Defendant Department of Revenue.

John Thomas, Assistant County Counsel, Multnomah County Counsel, filed a Motion to Intervene but did not argue the cause at trial.

Decision for Defendant and Intervenor rendered August 31, 1998.

**CARL N. BYERS, Judge.**

Plaintiffs are five rental car companies operating out of the Portland International Airport. The airport is owned and operated by the Port of Portland (Port). Plaintiffs operate on the subject premises as "Concessionaires."[1] The Multnomah County Department of Assessment and Taxation (assessor) determined that the concession premises were not exempt from property taxation and should be added to the tax roll as omitted property for the tax years 1990-91 through 1993-94 and assessed for taxation for 1994-95 and 1995-96. Plaintiffs make five claims, four of which relate to the taxability of the concession premises and alleged defects in the assessments. The fifth claim asserts that, if the properties are taxable, then the assessed values are excessive. At the request of the parties, the court consolidated the cases for trial and bifurcated the trial. The first part of the trial will determine whether the premises are taxable and whether the assessments are valid. If the property is taxable and the assessments are valid, the second part of the trial will determine the real market value of each property.

## FACTS

Each Plaintiff is a nationally operated for-profit corporation engaged in the car rental business. The Port is a political subdivision of the state of Oregon whose property is

---

[1] Plaintiffs also lease other premises from the Port for their car rental operations, but those leased premises are not in question.

exempt from property taxation. ORS 307.110[2] imposes a tax on publicly owned property that is used by a taxable person or entity "under a lease or other interest or estate less than a fee simple * * *." The premises operated by Plaintiffs as Concessionaires fall into four categories: (1) customer-sales counters located in the terminal building on the lower level near the baggage-claim area, (2) customer check-in space on the first level of the parking structure (facing the terminal), (3) the car ready/return area located on the first floor of the parking structure, and (4) the fuel and car-wash area just east of the parking structure.[3]

Each Plaintiff operates under a written "Operating Agreement," which specifies the rights and responsibilities of the Port and the Concessionaire.[4] The designated premises for each Concessionaire are described by the agreement and depicted on an attached diagram. Section 3.3.5 of the agreement establishes that use of the designated premises are subject to the rights of ingress and egress as provided in Section 4.3.2. That Section states:

> "Concessionaire hereby grants the Port, its employees, agents, representatives, invitees, and general public, the right of ingress and egress through Concessionaire's Designated Premises as shown on Exhibit A, the use of which shall be for ingress and egress to the spaces reserved for the port on the first floor of the Parking Structure."

During the years in question, only the customer-sales areas were assessed for taxation, which were a minor portion of the premises used by Plaintiffs. For example, Avis was taxed on 245 square feet, whereas Avis's total concession area was 55,979 square feet. On October 13, 1993, the assessor issued notices of intent to place the properties on the tax roll because they were either omitted or incorrectly entered

---

[2] All references to the Oregon Revised Statutes are to 1991.

[3] The customer-sales counters were removed from the terminal building in October 1994, and that function was then handled at the customer check-in space in the parking structure.

[4] The Operating Agreements appear to have expired July 1994 and the parties continued on a month-to-month basis under a hold-over clause.

for tax years 1990 through 1993. In response, all of the Plaintiffs requested more specific information, which the assessor provided.

In accordance with the statute, the assessor held a show cause hearing, but Plaintiffs were unable to convince the assessor that the properties were not taxable. Accordingly, the assessor issued "Omitted Property Assessments" asserting taxes due for the period 1990-91 through 1993-94. Plaintiffs appealed to the Department of Revenue, which, after a hearing, upheld the taxation of the subject premises. Plaintiffs then appealed to this court.

## ISSUES

(1) Are the properties used by Plaintiffs as Concessionaires taxable under ORS 307.110? (2) Was the procedure used to add the properties to the tax roll defective? (3) Were the property descriptions used by the assessor defective?

## ANALYSIS

(1) Are the properties used by Plaintiffs as Concessionaires taxable under ORS 307.110?

ORS 307.110(1) provides:

"* * * Except as provided in ORS 307.120, all real and personal property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or political subdivision of this state, held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable, except employees of the state, municipality or political subdivision as an incident to such employment, shall be subject to assessment and taxation for the real market or specially assessed value thereof uniformly with real property of nonexempt ownerships."

In construing this statute, the court's function is to ascertain the intent of the legislature and apply it to the facts as determined by the court. The legislative intent is to be determined first from the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993).

Plaintiffs contend that their interest in the concession premises is not taxable under ORS 307.110. Both parties recognize that the phrase in the statute "interest or estate less than a fee simple" is similar to that found in *Sproul et al v. Gilbert et al*, 226 Or 392, 399-400, 359 P2d 543 (1961). In that case, the taxpayer, under a written agreement, held grazing privileges on federal land. The Oregon Supreme Court held that the grazing privileges constituted a "possessory interest," which essentially constituted a "lease" rather than a license. In making that determination, the court stated:

> "It is, then, the character of the occupant's right to use until his interest is terminated which is regarded as the significant factor. If, prior to termination, the transferor can rightfully interfere with every use the occupant might make of the premises, the interest is clearly a mere license. If any interference by the transferor is prohibited, the transferee's interest is clearly a leasehold. When a case does not present either of these extremes we are required to determine whether the right to use bargained for by the transferee is substantial enough to warrant giving him the benefits (or imposing upon him the burdens) which legal tradition has attached to possessory interests. Generally the substantiality of the occupant's interest is tested by the inquiry: Does he have sufficient control over the premises to warrant the label of possession?" *Id.* at 406.

In light of *Sproul*, the determining factor is the extent of Plaintiffs' control over their concession premises. It appears that their use of the designated premises is limited to specific listed uses. Plaintiffs have the right and obligation to operate a car-rental concession. They can also sell other services such as mobile phones, insurance, etc., and can use other public roadways and walkways. Although section 4.3.2 of the Concession Agreement gives third parties the right of ingress and egress through the premises, it appears to be only that portion of the premises located on the first floor of the parking structure. That right does not appear to extend to other portions of the premises such as the counter area or the fuel or car-wash area. Also, the limited use by third parties would not "materially interfere" with Plaintiffs' use of the premises. Most of Plaintiffs' evidence that showed some

interference pertained to individuals who had no right to be in particular areas.

The Port considers the lobby space in front of the check-in counters and the parking structure as a nonpublic area, similar to an open area in a retail store. Plaintiffs are charged the same rent for the lobby area as they are for counter space area and presumably have some control over the lobby area. The restroom facilities located in the parking structure are not considered part of the concession premises and are maintained by the Port.

The concession agreements impose more detailed obligations upon Plaintiffs than are found in a typical lease. In addition to a typical lease requirement of keeping the designated premises in a safe, clean, orderly, and inviting condition, the Concessionaires' employees must wear uniforms and maintain quiet behavior with no overt solicitations. No improvements, alterations or installations may be made without the prior written consent of the Port, and the Concessionaires are required to install any necessary improvements and keep them in first class condition. The Port has the obligation to provide security for the premises. Section 7.3 of the Operating Agreement provides:

> "Subject to the Concessionaire performing all obligations of this Operating Agreement, and except as otherwise provided herein, the Concessionaire's rights will not be disturbed by the Port or anyone acting by, through or under the Port."

The agreement provides that upon six months' notice, the Port can require the Concessionaire to relocate within the airport. The Port is to provide a suitable substitute area and compensate the Concessionaire for the cost of relocating. If the parties cannot agree on a suitable substitute area, the Port can "terminate and recapture the Designated Premises and take title to all of the Concessionaire-owned improvements on the Designated Premises." On termination, the Concessionaire can hold over on a month-to-month basis. However, on termination, title to all improvements vest in the Port (except trade fixtures, moveable equipment, and furniture). The written agreement terminated June 10, 1994.

Therefore, title to the improvements vested in the Port as of that date.

Plaintiffs submitted testimony that, as a practical matter, they are unable to exclude the public and other airport personnel from their premises. The Port has refused to allow installation of devices to exclude others. This would tend to indicate that Plaintiffs have less than an exclusive right to the area. However, except for pedestrian traffic in the parking structure, intrusion on the concession premises by others is *not* authorized by the Port. Plaintiffs have the right to obtain Port assistance in removing or barring the public from the subject premises. Plaintiffs contend that the Port has reserved substantial control over the premises. Like any landlord, the Port may inspect the premises and make emergency repairs or corrections and repairs that the users should have made. Because of the Port's governmental status, it also has police powers. However, the Port does not have the right to disturb or interfere with Plaintiffs' use of their areas so long as they are not in breach of their agreements.

In *Sproul*, the court also looked at the potential uses of the property, considering whether the subject use constitutes a substantial part of all practical uses to which the real estate may be suitable. Here, it appears that Plaintiffs' use of the property constitutes the greater use of the property. The Operating Agreement recites that the service provided by the rental car companies is an "essential service" to passengers using the airport. The use of the premises by the Concessionaires essentially excludes any other significant use of the property. "Trespassing" by members of the public or the unauthorized collection of "smart carts" by individuals for money are not sufficient to materially interfere with Plaintiffs' greater use of the property.

In summary, Plaintiffs have entered into negotiated bilateral agreements under which they have the right to use the premises without interference by the Port. The conditions imposed for use of the areas are designed to benefit the public and promote Plaintiffs' operations without conflict or dispute. The court finds that Plaintiffs have sufficient control and exclusive rights to constitute an interest subject to taxation under ORS 307.110.

(2) Was the procedure used to add the subject properties to the tax rolls improper because the properties had not been omitted?

The basic facts are undisputed. On October 13, 1993, the assessor sent notices to the Port indicating that the subject properties had either been "omitted from the assessment and tax roll or incorrectly entered thereon" for tax years 1990-91 through 1993-94. The notices indicated that the assessor intended to correct the assessment rolls, showing the changes that would be made for each of the tax years in question. Those changes were significant. For example, with regard to Avis, the 1990 assessed value was $26,200 and the proposed corrected value was $1,035,000. For 1992 and 1993, the assessed value was zero and was corrected to $1,152,000 for each of those years.

The notice established the time for a show cause hearing as required by statute. Plaintiffs' representatives requested a breakdown of the proposed increase in assessments. The assessor furnished this information on October 27, 1993. Plaintiffs' representatives appeared at the show cause hearing but did not persuade the assessor that the subject premises were not taxable. Accordingly, on May 2, 1994, the subject premises were added to the roll as omitted properties and tax bills were sent to the Port for each of the Plaintiffs, which they paid under protest.

Plaintiffs contend that the properties were not actually omitted because they were on the tax roll as exempt properties of the Port. Plaintiffs assert that it was therefore error to assess them as omitted properties. No evidence was submitted indicating how the assessor discovered that the properties were not assessed. From the documents submitted, it appears that only part of the subject areas were assessed to Plaintiffs for 1990 and 1991 and not assessed at all for 1992 and 1993. To the extent that portions of the areas were shown on the assessment roll as owned by the Port and "exempt," the assessment roll was in error. Whether omitted or erroneously treated as exempt, the assessor followed the proper procedure for correcting the roll. *Assoc. Computer Serv., Inc. v. Dept. of Rev.*, 7 OTR 1, 4 (1977).

(3) Were the property descriptions used by the assessor defective?

■ Plaintiffs contend that all of the assessments fail to adequately describe the subject properties in accordance with ORS 308.240. That statute sets the standards for adequacy of identification, requiring both an owner's name and a property description. It allows for primary reliance upon one or the other. If property is correctly described, the assessment shall not be invalidated even though there is an error in the owner's name, including omission of the name entirely. Similarly,

> "* * * Where the name of the true owner, or the owner of record, of any parcel of real property is given, the assessment shall not be held invalid on account of any error or irregularity in the description if the description would be sufficient in a deed of conveyance * * * or * * * in an action to enforce a contract * * * [that] a court with jurisdiction to grant equitable remedies would hold it to be good and sufficient." ORS 308.240(2).

Plaintiffs point to the Notices of Omitted Property Assessments, which give the account number and indicate that the address is "WI/7000 NE Airport Way, Portland, OR 97218." No specific premises are identified. However, ORS 311.209, which provides for the notice of omitted property assessment, requires a description of the property only "in general terms." It does not require a specific description. The court finds that the notices complied with the requirements of ORS 311.250.

Plaintiffs also contend that the assessments are invalid because the property description on the assessment and tax roll is incorrect. *Lincoln County v. Dept. of Rev.*, 12 OTR 548 (1993). Plaintiffs did not introduce evidence of the assessment and tax roll directly, but did introduce copies of their property tax statements. The statements contain the following information:

TAX ROLL DESC:
SECTION 08 1 N 2 E     LOT BLOC
TERMINAL BLDG
TL 9 7.39 ACRES
SEE NONTAX ACCT 94208-0090

Plaintiffs argue that because the assessment and tax roll are a single record (ORS 308.217(1)), the description on the property tax statement is evidence of the description on the assessment roll. As indicated above, the "TAX ROLL DESC" identifies the tax lot of the terminal building. Plaintiffs correctly point out that the terminal building tax lot is much larger than the subject properties and, after October 1994, none of the properties were located in the terminal building.

Defendant contends that ORS 311.250, which provides for property tax statements, does not require "any property tax description." However, during the years at issue, ORS 311.250(2)(b) specified that the property tax statement *shall* contain the name and address of the owner of the property and:

> "The property type, its account number, or in the case of real property, a description which meets the requirements of ORS 308.240(1)."

The property description contained in the property tax statement as set out above does not appear to be correct to the extent it indicates that the subject property is within the terminal building area or tax lot 9. However, the description also contains a reference to a "NONTAX ACCT 94208-0090." There is no indication or evidence of what information or description is contained in that reference.

Plaintiffs seek to have the assessments declared invalid because they are not correct or complete. Plaintiffs rely on this court's decision in *Lincoln County v. Dept. of Rev.*, 12 OTR 548 (1993). However, in that case, the taxpayers were unable to determine what property was covered by the assessment and therefore unable to determine whether it was assessed in excess of its real market value. Here, plaintiffs make no claim that they were unable to determine exactly what property was being assessed. The assessor had furnished them with specific square footage breakdowns of each of the areas in question.

The assessor here is presented with a difficult challenge. The four areas in question are not readily amenable to the type of description contemplated by ORS 308.240(1). Although official maps would be desirable, the testimony

indicated that such was not practicable. In these circumstances, a general description of the property with reference to the specific diagrams and descriptions used by the parties for their agreement should suffice. Certainly, if there was a dispute between the Port and Plaintiffs as to the extent of the properties covered by the concession agreements, then the first resort would be to those diagrams and descriptions. Therefore, it seems reasonable to rely upon such for purposes of assessment and taxation.

■       The property tax statements correctly set forth the names of the owners and the correct account numbers. ORS 308.240(2) provides:

> "* * * Where the name of the true owner, or the owner of record, of any parcel of real property is given, the assessment shall not be held invalid on account of any error or irregularity in the description if the description would be sufficient in a deed of conveyance from the owner, or is such that, in an action to enforce a contract to convey employing such description, a court with jurisdiction to grant equitable remedies would hold it to be good and sufficient."

■       In determining whether a court with equitable powers would enforce a contract employing the description in question, it is well to remember that:

> "* * * [I]t is the established rule that the courts will be liberal in construing descriptions of premises conveyed by deed and that a description of land is sufficiently definite and certain if it is possible for a surveyor to ascertain from the description, 'aided by extrinsic evidence,' what property was intended to be conveyed." *O'Hara v. Brace*, 258 Or 416, 422, 482 P2d 726 (1971) (quoting *Sequin et al v. Maloney-Chambers*, 198 Or 272, 281, 253 P2d 252 (1953)).

In this case, the surveyor could use both the account number and the reference to the nontax account as part of the description. In addition, undoubtedly part of the "extrinsic evidence" to be considered would be the diagrams and the agreements of the Port and Plaintiffs. The court finds that such information would be sufficient for a court of equity to enforce a conveyance or contract.

## CONCLUSION

In summary, the court finds that the subject premises operated by Plaintiffs, as Concessionaires, are taxable under ORS 307.110. The court further finds that errors and omissions on the tax rolls for 1990-91 through 1993-94 were properly corrected by the assessor and the properties have been validly assessed. Based on these findings, the court will set these matters for trial to determine the real market value of each taxable interest.